In the Matter of Robert A. MARTIN a/k/a R. Allan Martin a/k/a Robert Allan Martin, Bankrupt-Appellant.

No. 733, Docket 76–5041.

United States Court of Appeals, Second Circuit.

Argued March 30, 1977.

Decided May 3, 1977.

Bernard Gartlir, New York City (Hofheimer, Gartlir, Gottlieb & Gross, New York City, on the brief), for bankrupt-appellant.

Frederic E. Weinberg, New York City (Levy, Levy & Ruback and Gary L. Blum, New York City, on the brief), for trustee in bankruptcy-appellee.

Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.

LUMBARD, Circuit Judge:

The bankrupt Robert A. Martin appeals from an order of the Southern District affirming the bankruptcy referee's denial of discharge for failure to keep or preserve

adequate records of financial transactions, Bankruptcy Act § 14c(2), 11 U.S.C. § 32(c)(2). Appellant contends that Referee Herzog erred in holding as a matter of law that failure to produce adequate records precludes discharge even where the records have been lost through no fault of the bankrupt. Martin also maintains that, in any event, his financial transactions can still be adequately determined from certain corporate records. We reverse and remand to the district court for further proceedings on both these matters.

Martin's debts arose in the early 1960's and he filed his voluntary petition in bankruptcy on March 4, 1965. After eleven examinations of Martin, the trustee specified his objections to discharge in December 1968. The trustee's accountant Sidney C. Lautt and Martin testified at hearings before Referee Herzog which commenced in May 1969 and, after several adjournments, were concluded in February 1972.

During the early 1960's Martin was an 80% stockholder and principal officer of Robert A. Martin Associates, Inc. ("Martin Associates"), a registered broker-dealer in securities in New York City. Aside from its public functions, the corporation also served as the broker in a number of securities transactions that Martin conducted for his own account. In late 1962 or early 1963, the corporation ceased doing business and began liquidation.

The trustee's accountant testified that because he had never received Martin's checkbook stubs for the years in question, he had been unable to identify the nature and source of several million dollars in withdrawals and deposits made by Martin in connection with his securities transactions. The bulk (93%) of these unexplained transactions occurred prior to the end of 1962.

Martin testified that at the time of filing his bankruptcy petition he had shipped most of his and Martin Associates' records, including his check stubs, to a warehouse in the Bronx. All these records except for the stubs were ultimately received by the trustee's accountant. Martin testified that he first became aware that the check stubs were missing in the course of being examined by the trustee, and that he then went to the office of the trustee's accountant and searched all the files there without success. He did not, however, inquire of the warehouseman to see if he might still have the stubs.

Martin also testified that his personal securities transactions had been recorded on the corporate ledgers of Martin Associates. However, it is not clear from his testimony whether any substantial portion of his personal transactions, such as those which may have been conducted through outside brokers or after Martin Associates had ceased doing business, were not listed in the corporate ledgers. The trustee's accountant testified that he had not studied the Martin Associates ledgers.

In a decision dated December 3, 1973, Referee Herzog sustained the trustee's section 14 c(2) objection to discharge. He rejected Martin's explanation that his check stubs had been lost in transit, holding that "the duty to preserve such records is his and his alone until they are delivered into the custody of the trustee or his agent." He concluded that the Martin Associates' ledgers were not adequate substitutes for personal records because they could not be used to determine Martin's post-1961 transactions. In an unreported opinion filed October 8, 1976, Judge Palmieri affirmed.

■■■ We conclude it was error to hold the bankrupt strictly responsible regardless of fault for the loss of his checkbook stubs. Section 14 c(2) denies discharge to any debtor who has "failed to keep or preserve books of account or records, from which his financial condition and business transactions might be ascertained, unless the court deems such . . . failure to have been justified under all the circumstances of the case . . . ." The denial of discharge serves both to deter inadequate recordkeeping and to protect creditors whenever a failure to preserve records may have been motivated by fraud. However, where records have been lost or destroyed through no fault of the bankrupt, any prophylactic

function to be performed by § 14 c(2) becomes minimal and is outweighed by the Bankruptcy Act's general policy in favor of giving the bankrupt a fresh start. *Gross v. Fidelity & Deposit Co.,* 302 F.2d 338, 341 (8th Cir. 1962); *International Shoe Co. v. Lewine,* 68 F.2d 517, 518 (5th Cir. 1934).

If the bankrupt's testimony (as to which we express no opinion) is to be believed, check stubs from which all his financial transactions would have been ascertainable were lost while in transit from him to the trustee. Discharge should not be denied unless the referee finds this testimony to be false or concludes that the bankrupt was remiss in his efforts to trace the missing records. We remand to the district court so that findings may be made on this issue.

Another possible issue on remand will be the adequacy of the corporate ledgers as substitutes for personal files. The record is not helpful in resolving that issue. At the hearing before Referee Herzog, neither side sought or offered to trace in detail Martin's securities transactions in the Martin Associates ledgers. On appeal, Martin contends that all his transactions were recorded in the corporate ledgers, and that this recording practice continued even after the corporation ceased doing business with the public. However, Martin did not express these points clearly enough at the referee's hearing; in his decision, Referee Herzog assumed that the corporate ledgers were closed once the corporation began liquidation. There is some further confusion regarding dates: Martin testified that liquidation of the corporation began near the end of 1962, but Referee Herzog placed it at the start of 1962. It also appears that the referee may have been under the misimpression that Lautt, the trustee's accountant, had analyzed the Martin Associates' ledgers in depth. The trustee maintains that this task was Martin's responsibility; he says Martin has had ample access to the records. Martin claims to have repeatedly offered to go through the corporate ledgers and point out his personal transactions to the trustee's accountant.

■ Ordinarily, section 14 c(2) should not bar a discharge if the bankrupt's transactions and financial condition can reasonably be ascertained from the books of his corporation. Compare *In re Halpern,* 387 F.2d 312 (2d Cir. 1968), *In re Sandow,* 59 F.Supp. 782, 784 (S.D.N.Y.1944), aff'd, 151 F.2d 807 (2d Cir. 1945), and *In re Lepine,* 4 F.Supp. 808 (E.D.N.Y.1933), aff'd mem., 70 F.2d 1017 (2d Cir. 1934), with *In re Muss,* 100 F.2d 395 (2d Cir. 1938). Problems seem to have arisen in this case because of uncertainty over who has the burden of going forward on this issue. Regardless where the ultimate burden of persuasion lies,[1] assignment of the initial burden of production depends on the circumstances, see Advisory Committee's Note to Bankruptcy Rule 407; relative accessibility of the records and relative capabilities of the parties should be taken into account. See, e. g., *In re Romano,* 196 F.Supp. 954, 958–59 (E.D.Tenn. 1961). Unfortunately, each side in this case apparently thought the other had the burden of production.

■ This issue should be resolved upon remand. Martin should be given suitable opportunity to go through the corporate ledgers to identify and segregate his personal transactions. Whether the trustee's accountant should be required to assist in this review is a subject for the referee's discretion. In any event, to the extent that Martin's personal financial transactions may be shown from the search of the Martin Associates' ledgers, he should be given the opportunity to present such evidence to the referee.

1. The proviso at the end of § 14 c placed the burden of proof on the bankrupt once the objector made a prima facie case. See generally *Industrial Bank of Commerce v. Bissell,* 219 F.2d 624, 625–26 (2d Cir. 1955). This proviso has been superseded by Bankruptcy Rule 407, under which the burden of persuasion remains always on the objector. See Advisory Committee Note. The new rules are applicable to bankruptcy proceedings pending as of October 1, 1973 except to the extent that application would be unfeasible or unfair. See Bankruptcy Rules and Officials Forms, 411 U.S. 989, 991, 93 S.Ct. 3081, 36 L.Ed.2d xxxvii ¶ 2 (1973).

We remand to the district court for further proceedings consistent with this opinion.[2]

2. Appellant also argues he is entitled to discharge because of the three-and-a-half year delay between the filing of his petition and the trustee's specification of objections. We reject this claim on the basis of the district court's finding that the extensive examinations of the bankrupt were required due to the condition of the bankrupt's records.