In the Matter of Gilbert A. VIOLA, Bankrupt.

The FIRST NATIONAL BANK IN FT. MYERS, a National Banking Corporation, Plaintiff,

v.

Gilbert A. VIOLA, Defendant.

Bankruptcy No. 78–698 T.

United States Bankruptcy Court, M. D. Florida, Tampa Division.

March 13, 1980.

**220**

David C. Sapp, II, Fort Myers, Fla., for plaintiff.

William H. Shields, Fort Myers, Fla., trustee.

Malka Isaak, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION ON OBJECTION TO DISCHARGE

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS an adversary proceeding and the matter under consideration is the right of the bankrupt, Gilbert A. Viola, to a general bankruptcy discharge. The proceeding was instituted by a complaint filed by the plaintiff, The First National Bank in Ft. Myers.

It is the contention of the plaintiff that the Bankrupt's purchase of a truck in the name of Maxine Viola, his mother, within one year prior to his filing a petition in bankruptcy constitutes a transfer, removal or concealment of property with intent to hinder, delay or defraud creditors and that, therefore, the Bankrupt should be denied his discharge by virtue of Sec. 14c(4) of the Bankruptcy Act.

The controlling facts as developed at the final evidentiary hearing can be briefly summarized as follows:

Between December 15, 1977 and January 26, 1978, three separate default judgments totalling $4,022.87 were entered in favor of the Plaintiff and against the Bankrupt in three separate actions filed in the County Court in and for Lee County, Florida. On January 27, 1978, one day after the entry of the last judgment, the Bankrupt sold a boat, trailer and outboard motor, the title to which was in the Bankrupt's name. Payment for these items was in the form of a check in the amount of $3,500, payable to the order of the Bankrupt from J & M Pump Service, Inc. (Def's. Exh. # 1). The proceeds of this sale were applied toward the purchase of the 1978 Ford pickup truck which is the subject matter of this controversy. This is evidenced by the fact that the $3,500 check was endorsed by the Bankrupt and stamped "Pay to the Order of . . . Sam Galloway Ford, Inc.", the dealership from which the truck was purchased.

The record reveals that the truck was purchased solely through the Bankrupt's endeavors and that he arranged all the details concerning the type of truck that he desired. The salesman at the Ford Dealership who was a friend of the Bankrupt and, therefore, aware of his past credit history, advised the Bankrupt that the co-signature of his mother would be necessary in order

to obtain financing. Therefore, both the Bankrupt and his mother submitted credit applications. The finance manager at the Ford Dealership then submitted an application in both names to one lending institution and this application was rejected. The finance manager then submitted the application to another lending institution in the name of the Bankrupt's mother only. The submission of the application in the mother's name alone was not done at the request of the Bankrupt, but was the finance manager's own determination as the best approach to follow in order to obtain financing. It is clear from the record that the Bankrupt's mother has no interest in the truck. She, in fact, already had an automobile at the time that the truck was purchased and, has no apparent need for a truck. Furthermore, there was no consideration given by the Bankrupt's mother in return for the truck.

After gaining knowledge of the above transaction, the Plaintiff on or about May 8, 1978, filed a Motion for Contempt and Determination of ownership of Personal Property in the County Court in and for Lee County, Florida, seeking a determination that the Bankrupt was the true owner of the truck even though it was titled in his mother's name and seeking an order directing the Sheriff to execute and levy upon the truck. On May 23, 1978, the County Court entered an order directing the Sheriff to execute and levy upon the truck. In the nondecretal portion of this order, the County Court stated that the purchase of the truck by the Bankrupt "constituted an acting effort by (the Bankrupt) to delay, hinder and defraud" the Plaintiff.

On June 23, 1978, the Bankrupt filed his voluntary petition in bankruptcy and listed the truck in his schedules of assets. The Plaintiff subsequently initiated the instant proceeding objecting to the discharge of the Bankrupt on the ground that the purchase of the truck by the Bankrupt in the name of his mother constituted a transfer, removal, or concealment of property with intent to hinder, delay or defraud the Plaintiff within the meaning of Sec. 14c(4) of the Bankruptcy Act.

The Plaintiff initially filed a Motion for Summary Judgment contending that there were no genuine issues of material fact and that the Plaintiff was entitled to judgment as a matter of law in that the issues arising in the instant controversy had already been litigated and that the determination by the Lee County Court that the purchase of the truck by the Bankrupt was an attempt to delay, hinder and defraud a creditor was res judicata. This Court, however, after considering affidavits interposed by the Bankrupt, denied the Motion for Summary Judgment having been satisfied that the issue of whether the Bankrupt's placing the title to the truck in the name of his mother was done with the intent to hinder, delay or defraud his creditors was not litigated in the County Court proceeding.

The Plaintiff's objection to the Bankrupt's discharge is based on Sec. 14c(4) of the Bankruptcy Act which provides in pertinent part as follows:

"The Court shall grant the discharge unless satisfied that the bankrupt has . . . (4) at any time subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred, removed, destroyed or concealed, or permitted to be removed, destroyed, or concealed any of his property, with intent to hinder, delay or defraud his creditors . . ."

Prior to the adoption of the Bankruptcy Rules, the burden of proof in a contested discharge proceeding was also governed by Sec. 14c of the Bankruptcy Act which provides in pertinent part as follows:

". . . That if upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this subdivision [c], would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

This provision has been interpreted to shift the ultimate burden of persuasion, not

just the burden of going forward with the evidence, to the bankrupt, once the objector has established a prima facie case that the bankrupt is not entitled to a discharge. *In re Finn*, 119 F.2d 656 (3rd Cir. 1941); *In re Melnick*, 360 F.2d 918 (2d Cir. 1966); *Feldenstein v. Radio Distributing Co.*, 323 F.2d 892 (6th Cir. 1963); *Johnson v. Bockman*, 282 F.2d 544 (10th Cir. 1960). Thus in *Gunzburg v. Johannesen*, 300 F.2d 40 (5th Cir. 1962), the Court stated that:

> This is more than the burden of going forward with the evidence, for the bankrupt now has the risk of ultimately persuading the court that the allegations in the specifications are untrue.

However, Bankruptcy Rule 407 which became effective on October 1, 1973 now provides as follows:

> "At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection."

In interpreting this Rule, the Advisory Committee Note to Rule 407 specifically states: "The rule supersedes the proviso at the end of [Sec.] 14c of the Act." The cases which have considered the effect of Rule 407 on the proviso have held that the bankruptcy judge must allocate the burden of persuasion in accordance with Rule 407, see e. g. *In re Martin*, 554 F.2d 55 (2d Cir. 1977); *In re Tucker*, 399 F.Supp. 660 (S.D. Fla.1975).

■ Accordingly, in order to sustain an objection under Sec. 14c(4), the burden is on the Plaintiff to establish that (1) the act complained of was done subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, (2) with intent to hinder, delay, or defraud creditors, (3) that the act was that of the Bankrupt or a duly authorized agent, and (4) that the act consisted of transferring, removing, destroying or concealing any of the Bankrupt's property or permitting any of these acts to be done. 1A *Collier on Bankruptcy*, § 14.45 (14th ed. 1978).

■ In addition, the evidence must be viewed in light of the fact that the statutory provisions dealing with the bankruptcy discharge are remedial in nature, and of course, as such, have been traditionally construed strictly against the objectors and liberally in favor of the bankrupt in order to carry out the legislative intent, i. e. to give the bankrupt a fresh start in life. 1A *Collier on Bankruptcy*, § 14.02 (14th ed. 1978); see also *Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1971); *In re Adlman*, 541 F.2d 999 (2d Cir. 1976); *In re Pioch*, 235 F.2d 903 (3rd Cir. 1956). Accordingly, the reasons for denying a discharge to a bankrupt must be "real and substantial, not merely technical and conjectural." *Dilworth v. Boothe*, 69 F.2d 621 (5th Cir. 1934).

■ Furthermore, the law is well settled that in order to deny a bankrupt's discharge under Sec. 14c(4) of the Bankruptcy Act, the Plaintiff must establish that the property was transferred or concealed with actual fraudulent intent to hinder, delay or defraud. *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir. 1970). Constructive intent which is sufficient to set aside a transfer under Sec. 67 or under Sec. 70e of the Bankruptcy Act cannot be the basis for the denial of a discharge in bankruptcy. *In re Adlman, supra*.

■ In support of its contention that the concealment involved in the instant controversy is presumptively fraudulent, the Plaintiff cites two cases which held that when a transfer of property with little or no consideration is made a presumption of fraud arises. *Rothschild v. Lincoln Rochester Trust Co.*, 212 F.2d 584 (2d Cir. 1954); *In re Patrizzo*, 105 F.2d 142 (2d Cir. 1939); However, even though such a presumption has been recognized in many cases, it is clear that "it is not so much the acts of the bankrupt that will prevent his discharge as it is the intent with which he acts." *In re Pioch, supra*. Furthermore, the cases cited by the Plaintiff are factually distinguishable from the instant case inasmuch as in the cases cited, the conveyances were clearly the voluntary acts of the Bankrupts involved. In the instant case, the record re-

veals that the submission of the credit application in the name of the Bankrupt's mother alone was not made at the request of the Bankrupt but was done at the initiative of the dealership's finance manager. This not being the act of the Bankrupt, it cannot be presumptively indicative of his intent. Furthermore, even if the Bankrupt's subsequent acquiescence to the finance manager's decision could be said to give rise to a presumption of fraudulent intent, the ultimate burden of persuasion still remains with the Plaintiff.

■ Applying the foregoing principles to the controversy under consideration, it is evident that the evidence presented by the Plaintiff falls short of the requisite degree of proof and lacks the necessary persuasiveness to establish the fraudulent intent which is required in order to deny a discharge under Sec. 14c(4) of the Bankruptcy Act. Though some damaging statements were made by the Bankrupt at his April 12, 1978 deposition, it appears that he was not represented by counsel at the deposition and that, for the most part, he merely affirmatively acknowledged suggestions made by counsel for the Plaintiff. Furthermore, the dealership finance manager, a disinterested third party, testified that it was his sole decision to submit the credit application in the name of the Bankrupt's mother alone. Thus, since the evidence is at the most in equilibrium, the Plaintiff has failed to carry the burden of proof as to the existence of any specific and actual intent to hinder, delay or defraud on the part of the Bankrupt. Accordingly, the objection to discharge based on Sec. 14c(4) of the Bankruptcy Act should be overruled.

A separate final judgment will be entered in accordance with the foregoing.