**In re Lamonte Russell TUTTLE, Ruth Ella Tuttle, Debtors.**

**Christopher J. REDMOND, Trustee, Plaintiff,**

**v.**

**Lamonte Russell TUTTLE, Ruth Ella Tuttle, Defendants.**

**Bankruptcy No. 79–11883. Adv. No. 88–0096.**

United States Bankruptcy Court, D. Kansas.

June 5, 1981.

See also, 15 B.R. 22, affirmed 16 B.R. 473.

Christopher J. Redmond, Wichita, Kan., in pro. per.

Lamonte Russell Tuttle and Ruth Ella Tuttle in pro. per.

David M. Arnold, Wichita, Kan., for debtors.

## MEMORANDUM OF DECISION AND ORDER

ROBERT B. MORTON, Bankruptcy Judge.

### APPEARANCES

On the trustee's complaint objecting to discharge of the debtors and the trustee's objection to debtors' amended claim of exemption, trustee, Christopher J. Redmond, Esq. appears in person; debtors appear in person and by David M. Arnold, Esq.

### STATEMENT OF THE CASE

Debtors, LaMonte Russell Tuttle and Ruth Ella Tuttle, filed their joint voluntary petition for relief on November 28, 1979. On Schedule B–4—Property Claimed as Exempt—the debtors elected the federal exemptions as opposed to those provided by Kansas law.[1] Debtors' asset Schedule B–2 —Personal Property—did not reflect any cash on hand nor any deposits of money with banking institutions, savings and loan associations, credit unions, public utility companies, landlords, or others.[2] A statement of financial affairs for debtors engaged in business was filed by the debtors on February 7, 1980, but no change in the bank deposit designation in the schedules, as originally filed, was indicated.[3]

The meeting of creditors was held on December 17, 1979 pursuant to 11 U.S.C. § 341. The order and notice for that meeting was entered and served November 30, 1979, providing, *inter alia*, that "unless the court extends the time, any objection to the claim of exempt property (Schedule B–4) must be filed within 15 days after the above date set for the [Sec. 341] meeting of creditors."[4] No objection to or amendment of the exemption claim was filed prior to the expiration of the fifteen-day period.

Subsequently, by a letter dated February 7, 1980 from Mr. Roderick G. Bugbee, Vice President and Cashier of the First National Bank in Quinter, Kansas, the trustee ascertained the debtors had a balance of $4,563.80 in a joint personal demand checking account at that bank. Thereupon, the trustee proceeded to recover those monies for the estate. That recovery was accomplished on February 14, 1980.[5]

Thereafter, on February 25, 1980 the trustee filed a complaint under 11 U.S.C. § 727(a)(2) objecting to discharge of the debtors on the ground they had concealed and transferred the subject funds with intent to hinder, delay or defraud creditors and the trustee. On the day following, February 26, 1980, debtors, upon the advice of their attorney, filed an amendment to their Schedule B–4, seeking to exempt the $4,563.80. The trustee objects pursuant to 11 U.S.C. § 522(g).

### MEMORANDUM

#### I

Section 727(a)(2) of the Bankruptcy Code provides the debtor shall be granted a discharge unless

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

---

1. File Document 1. The federal exemptions are set out at 11 U.S.C. § 522(d). The Kansas law which prohibits debtors from electing federal exemptions did not take effect until April 26, 1980. Act of April 22, 1980, Ch. 176, § 1, 1980 Kan.Sess.Laws 794 (codified at Kan.Stat.Ann. § 60–2312 (1980 Supp.)).

2. File Document 1.

3. File Document 9.

4. File Document 2.

5. Pltf. Exh. I.

The trustee contends that the debtors' failure to disclose and schedule the funds on deposit with the First National Bank in Quinter constitute grounds for denying a discharge under this section. From the stipulations and the evidence adduced, the court does not find an intent on the part of the debtors to hinder, delay, or defraud the trustee or creditors.

■ In order to prevent the granting of a discharge to these debtors, the trustee must have met the burden of proving the facts essential to his objection. Bankruptcy Rule 407. Section 727(a)(2) requires that the act complained of be done with *intent* to hinder, delay, or defraud a creditor or officer of the estate. "The elements of 'intent to hinder, delay or defraud' on the part of a debtor remain the same as under Section 14c.(4) of the Act. This intent must be actual and fraudulent as distinguished from constructive intent." 3 COLLIER ON BANKRUPTCY ¶ 727.02(3), at 727–8 (15th ed. 1980); *see also In re Earnest Crane, Jr.,* 13 B.R. 445, 7 B.C.D. 36 (Bkrtcy., N.D.Ala. 1980).

■ Although the margin is close indeed, after an extended consideration of the circumstances the court determines the evidentiary scales tip in favor of the debtors on the factual issue of intent: It is determined that their failure to list the Quinter bank account as an asset on their Schedule B–2 is attributable to their own carelessness and indifference rather than to an actual fraudulent intent.

On April 12, 1979, the Tuttles removed all monies except $3.81 from their personal checking account (account number 39–344–4) at the First National Bank in Quinter and deposited those funds in their business checking account (account number 24–710–3) at the same bank under the name of "M–W Drive In, LaMonte or Ruth Tuttle." When that transfer was completed, the Tuttles mistakenly believed their personal checking account was closed. They continued making deposits with the Quinter bank by checks payable to that bank drawn on their personal checking account (account number 3–856–3) at the First Bank of WaKeeney. The latter is some eighteen miles distant where the new 'M–W Drive In' business premises were located. Because no deposit slips or other deposit designation accompanied the checks when mailed, the Quinter bank, upon receipt of the checks, prepared the deposit slips and credited the appropriate account.

Only three transactions involving the Tuttles' personal checking account at the Quinter bank (number 39–344–4) occurred subsequent to April 12, 1979. Deposits in the amount of $2,466.10 and $2,172.89 were made on May 22, 1979 and June 7, 1979, respectively. The Quinter bank prepared deposit slips by which the two checks were credited to debtors' *personal account number 39–344–4.*[6] The third transaction involved a 'counter' type check for $79.00 drawn on the First National Bank of Quinter and signed by debtor Ruth Tuttle on May 26, 1979.[7] In the space provided for the account number, Mrs. Tuttle wrote "3–856–3", the number of the Tuttles' *WaKeeney* checking account; the Tuttles had no such numbered account at the Quinter bank. That original numerical designation was later stricken and the number of the Tuttles' personal account with the Quinter bank written in by some employee of the Quinter bank. The check was processed through debtors' personal Quinter account.

Although debtors received a Quinter bank statement dated June 25, 1979 which set forth the three transactions above reviewed,[8] the Tuttles insist that they had no knowledge of the status of their personal account at the Quinter bank; that they first learned of the situation when their attorney contacted them on or about February 25, 1980 to advise the trustee had recovered the funds.[9] Although obviously subjective and self-serving that testimony does

---

6. Pltf. Exhs. D and G.

7. Pltf. Exh. F.

8. Pltf. Exh. C.

9. Pltf. Exh. P is letter of trustee advising debtors' attorney of the recovery of the monies.

have support from other evidence. An examination of the debtors' ledger book reveals their rather primitive bookkeeping methods. The only documentary proof that debtors were aware of the balance in their personal checking account at Quinter is the bank statement mentioned above which they had received some four months before the filing of their bankruptcy petition.

In declining to charge debtors with the information imparted by the Quinter bank statement the court must, perforce, give full credence to debtors' testimony that they believed all banking transactions conducted by them with the Quinter bank after April 12, 1979 related solely to their business account rather than their personal account. And it is established that control of the deposits between the two accounts was exercised by personnel of the Quinter bank rather than by the debtors themselves.[10] Similarly, the $79.00 May 26, 1979 check written by Ruth Tuttle for withdrawal of funds bore her notation of the *WaKeeney* account number on the Quinter 'counter' check form; the change in the notation to designate the Quinter personal account was accomplished by some Quinter bank officer or employee.[11]

In sum, the evidence does not meet the trustee's burden of preponderantly establishing that debtors acted with intent to hinder, delay or defraud a creditor or an officer of the estate. Accordingly, the objection to discharge shall be overruled.

## II

The trustee also objects to debtors' amendment of Schedule B–4 whereby the Tuttles seek to exempt the money recovered by the trustee from the Quinter bank. On behalf of the estate the trustee asserts that debtors' failure so to amend their initial exemption claim within fifteen days following the Sec. 341 meeting of creditors

rendered the original claim finally allowed and, under the circumstances of this case, not subject to enlargement by an amendatory inclusion of the $4,563.80.

This court has previously examined the time limitations on a debtor's right to alter an earlier exemption election. *In re Lyon,* 8 B.R. 152, 6 B.C.D. 343 (Bkrtcy., D.Kan. 1980). The debtors in *Lyon* attempted to avoid a lien under 11 U.S.C. § 522(f) and to that end amend their schedule of exemptions after the fifteen day period following the meeting of creditors. The amendment would have elected the federal rather than the Kansas state exemptions; the latter option having been specified in their original Schedule B–4. That attempted lien avoidance and exemption amendment closely followed the filing by a creditor of a complaint to reclaim certain property not exempt under the original claim of Kansas exemptions. The court observed that the unamended exemption became finally determined and allowed when no objection was filed within fifteen days after the Sec. 341 meeting of creditors; that a change of exemption should not be permitted after a party in interest has relied on the finality of the original determination *and has sought affirmative relief based upon that determination.* Although *Lyon* was expressly limited to the circumstances there involved, the court is persuaded the reasoning enunciated therein should be extended to apply to the instant situation.

Section 522 (Exemptions) of the Code [12] does not specify the time for filing an objection to the debtor's claim of exemptions. Until the Rules of Bankruptcy Procedure governing the objection procedure are promulgated, "this matter must be covered by local rule or order pursuant to Bankruptcy Rule 927." 3 COLLIER ON BANKRUPTCY ¶ 522.26, at 522–63 n.1 (15th ed. 1980).

---

**10.** No explanation was suggested for the Quinter bank's action in depositing twenty-five checks in the business account and only two checks in the personal account.

**11.** Again, no explanation was offered as to why the check was debited against the personal rather than the business account.

**12.** 11 U.S.C. § 522.

In *Lyon*, this court examined Local Rule 4004 [13] which provides:

REAFFIRMATION AND DISCHARGE HEARING: TIME FOR FILING OBJECTIONS TO EXEMPTIONS; DETERMINATION OF PROPERTY AS EXEMPT

Within no more than 30 days after the entry of an order granting or denying a discharge and on at least 10 days' notice to the debtor and trustee, if one is appointed, the court shall hold a hearing as provided in § 524(d) of the Bankruptcy Code. Applications by the debtor for approval of reaffirmation agreements shall be filed before or at the hearing.

Any party in interest may file a written objection to exemptions claimed by or on behalf of the debtor within 15 days immediately following the first session of the meeting held pursuant to 11 U.S.C. § 341 unless such time be extended by the court for cause shown before the expiration of said 15-day period. *Absent a timely filing of such objection the property listed in the filed schedules as exempt is automatically determined exempt under 11 U.S.C. § 522(1).* (emphasis added).

This rule closely tracks Code section 522(*l*) which concludes "Unless a party in interest objects, the property claimed as exempt on such list (schedule) is exempt." [14]

One commentator has observed that "An initial failure of the debtor to claim the exemption may be corrected by a *seasonable* amendment" and suggests that a "seasonable" amendment is one made "while the property is still being administered by the trustee, unaffected by adverse rights." 3 COLLIER ON BANKRUPTCY ¶ 522.26, at 522–64 (15th ed. 1980) (emphasis added). As has been stated, in this District, under Local Rule 4004, an exemption is effective if no objection is filed fifteen days after the first session of the Sec. 341 meeting of creditors. Moreover, under the rationale of

*Lyon* this court has an additional basis for discretionary disallowance when a belated amendment would adversely affect an adverse interest asserted before the amendment is proposed; and the assertion of that adverse interest was in reliance upon the finality of the original exemption. There is general support for that viewpoint in other jurisdictions. *See In re Lowitz*, 3 B.R. 150, 6 B.C.D. 9 (Bkrtcy., N.D.Cal.1980); *In re Duggan*, 4 B.R. 709, 6 B.C.D. 666 (Bkrtcy., N.D.Tex.1980); *but see In re Boyer*, 7 B.R. 930, 7 B.C.D. 88 (Bkrtcy., D.Idaho 1981); *In re Maxwell*, 5 B.R. 58, 6 B.C.D. 1121 (Bkrtcy., N.D.Ga.1980) (no controlling local rule adopted); *In re Mertsching*, 4 B.R. 519, 6 B.C.D. 445 (Bkrtcy., D.Idaho 1980).

In the instant case some two and one-half months after the exemptions were allowed as claimed the trustee recovered $4,563.80 to which the estate was then entitled. Shortly thereafter the trustee, acting in his official capacity in the interest of general creditors, cited concealment of those monies in his filed complaint objecting to debtors' discharge. It was not until those events had occurred that debtors took the positions: (i) that they were personally entitled to the estate monies which otherwise would principally benefit general creditors; and (ii) that debtors are further entitled, through discharge, to an extinguishment of their debts to those same general creditors. That debtors have been upheld in the latter position does not mean they should prevail in the former.

The burden of proof is in their favor on the objection to discharge but they have no like advantage in attempting an avoidance of the consequences of their own careless and indifferent failure to ascertain and disclose a substantial sum of money belonging to the estate. Even though their WaKeeney business was relatively small [15] debtors are charged with the rudimentary knowledge of the manner in which bank account

---

**13.** Effective October 1, 1979. This rule is an adapted form of Interim Rule 4004, which is a restatement of subdivision (e) of Bankruptcy Rule 403.

**14.** 11 U.S.C. § 522(*l*).

**15.** However, LaMonte Tuttle testified the purchase consideration was $200,000. Transcript of December 17, 1979 Sec. 341 meeting. Pltf. Exh. A.

balances can be verified. Prior to the WaKeeney venture, Mr. Tuttle had been the manager of a similar operation for the nationwide Wendy's food chain.[16] The cash journal covering the WaKeeney business [17] shows checks and deposits were registered for the months of May through August, 1979. Also on the Quinter bank statement of June 25, 1979, concerning debtors' personal account, which they received,[18] are handwritten arithmetical calculations reconciling the transactions therein noted.

▇ But however indifferent to their business debtors had become in the fall of 1979 they were under a separate duty to examine into and correctly report all their assets for inclusion in their bankruptcy schedules. Again through apparent indifference debtors failed to meet that responsibility although admonished by counsel that such was their statutory obligation.[19] Neither before nor after their schedules were filed did debtors make the slightest effort to search out the monies in question. Now that the funds have been recovered for general creditors, solely through the trustee, debtors would appropriate that recovery for their own personal benefit. The principles of equity and plain fairness teach that their carelessness and indifference should not be so rewarded. More technically expressed, a proper exercise of the court's discretion calls for a denial of debtors' amended claim of exemption on considerations of laches and equitable estoppel, as well as on the procedural grounds existing under Local Rule 4004.[20]

### III

Debtors further argue that Sec. 522(g) of the Code [21] permits them to exempt property recovered by the trustee. That section provides that a debtor may exempt property recovered by the trustee under various Code sections "to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property". A discussion of this section may be found at 3 COLLIER ON BANKRUPTCY ¶ 522.08(3), at 523–31 (15th ed. 1980):

> Where the trustee recovers property fraudulently conveyed or concealed, the debtor may not claim exemptions out of the recovered property. *The transfer need not be fraudulent to defeat the debtor's right to claim an exemption in such property. Section 522(g) provides that such transfer need only be voluntary.* This section lists the various sections of the Code upon which the trustee may recover transferred property. . . . Ordinarily, under section 522(g), in such recoveries of property, a claim of exemption would attach. This is not the case, however, when the transfer was voluntary by the debtor. (emphasis added).

The Code's definition of "transfer" is phrased in broad language. " 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." 11 U.S.C. § 101(40). "Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property. *A deposit in a bank account or similar account is a transfer.*" H.R.Rep.No.95–595, 95th Cong.,

---

**16.** Trial testimony, LaMonte Tuttle.

**17.** Pltf. Exh. M.

**18.** Pltf. Exh. C. There was a delay in transmittal because the statement was initially mailed to debtors at their Hays, Kansas address.

**19.** Statement by David M. Arnold, Esq., in the course of oral argument.

**20.** In *In re Lyon*, 8 B.R. 152, 6 B.C.D. 343 (Bkrtcy.D.Kan.1980), this court noted that Bankruptcy Rule 110 was inconsistent with this court's decision in that case. Therefore, that rule, which permits an amendment of a schedule at any time before the case is closed, is also inconsistent with this decision.

**21.** 11 U.S.C. § 522(g).

1st Sess. 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, (emphasis added).

In this case, the Tuttles transferred the subject funds by deposit with the First National Bank in Quinter, Kansas. Although the money was ultimately deposited in an account which the debtors mistakenly thought had been closed, their initial relinquishment of the money to the bank for deposit was entirely voluntary. Thus, the debtors are precluded from exempting the property under Sec. 522(g)(1)(A).

### ORDER

The foregoing constitute findings of fact and conclusions of law as required by Bankruptcy Rule 752 and Rule 52(a) Federal Rules of Civil Procedure. In accordance therewith and based thereon

IT IS ORDERED that the trustee's objection to discharge of the debtors is overruled.

IT IS FURTHER ORDERED that the trustee's objection to debtors' amended Schedule B–4 is sustained.