In re Sarkis K. NAZARIAN, Debtor.

AETNA INSURANCE COMPANY National Bank of Washington Maryland Casualty Company Henri C. deLozier, Jr., Trustee, Plaintiffs,

v.

Sarkis K. NAZARIAN, Defendant.

Bankruptcy No. 80–10256.
Adv. No. 81–0108.

United States Bankruptcy Court,
D. Maryland.

Feb. 26, 1982.

Gregory M. Wilson, Laurel, Md., for debt-
or.

J. Roy Thompson, Jr., Edward Graham Gallagher, Washington, D. C., for Aetna Insurance Co.

Robert C. Blackford, Weaton, Md., Filiberto Agusti, Washington, D. C., for Maryland Casualty Co.

Richard T. Tomar, Washington, D. C., for National Bank of Washington.

Henri C. deLozier, Jr., Trustee.

## MEMORANDUM OPINION DENYING DISCHARGE

HENRY D. EVANS, Bankruptcy Judge.

This matter came on for hearing on the Complaint Objecting to Discharge filed by Aetna Insurance Company, National Bank of Washington, Maryland Casualty Company, and Henri C. deLozier, Jr., Trustee (henceforth "Plaintiffs") against the Debtor, Sarkis K. Nazarian (henceforth "Debtor"). The hearing began on November 19, 1981, but was continued when the Court permitted Debtor's attorneys to withdraw. The hearing was concluded on February 1, 1982, after the court gave the Debtor time to obtain, and confer with, new counsel. Plaintiffs object to the Debtor's discharge on the grounds that his conduct before and after the date of the order for relief in this case fulfilled the requirements for denial of discharge set forth in 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(5).

■ A debtor may be denied discharge under 11 U.S.C. § 727(a)(4) if he "knowingly and fraudulently, in or in connection with the case, made a false oath or account." The pleading and proof required for an objection under this section is identical to that required under § 14(c)(1) of the Bankruptcy Act. Bankruptcy Rule 407 states:

at the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the facts essential to his objection.

This provision superseded the proviso at the end of § 14(c) of the Bankruptcy Act and governs these proceedings under the Code. *In Re Martin*, 554 F.2d 55 (2d Cir. 1977); *Matter of Viola*, 3 B.R. 219, 222 (Bkrtcy.M.

D.Fla.1980). It requires the plaintiff to prove each necessary element. 4 *Collier on Bankruptcy* ¶ 727.04 at 727–49. In addition, objections must be scrutinized closely because discharge can only be denied on the precise grounds set out in the statute. *In re Gorman*, 14 B.R. 776, 8 B.C.D. 427 (Bkrtcy.N.D.Ala.1981).

Both sides agree that certain information necessary for complete answers to all questions on the Debtor's bankruptcy schedules does not appear on those schedules and that the Debtor swore to the veracity of the schedules when he signed them. The question before the court is whether these omissions from schedules signed by the Debtor, under oath, constitute a knowing and fraudulent false oath concerning a material fact.

■ The omission must relate to a material matter. *See, e.g., Aronofsky v. Bostian*, 133 F.2d 290 (8th Cir. 1943); *In re Fischer*, 4 B.R. 517, 6 B.C.D. 465, 466 (Bkrtcy.S.D.Fla.1980). Although an insignificant amount of money might be immaterial, *Matter of Ramos*, 8 B.R. 490, 495 (Bkrtcy.W.D.Wis.1981), citing, *Dilworth v. Boothe*, 69 F.2d 621 (5th Cir. 1934); in this case, the large amounts of money and large number of transfers involved in the omissions preclude such a finding of immateriality because the omissions were pertinent to the discovery of assets. *In re Mascolo*, 505 F.2d 274, 277 (1st Cir. 1974).

■ The Debtor contends that because the creditors may have been aware of the nature of the Debtor's business transactions, the omissions do not satisfy the requirements of 11 U.S.C. § 727(a)(4). This contention is erroneous. Whether in fact the creditors have relied on the false oath is irrelevant to its materiality. *In Re Mascolo*, 505 F.2d at 278, citing, *In re Slocum*, 22 F.2d 282, 285 (2d Cir. 1927); *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974).

■ Because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce fraudulent intent from all the facts and circumstances of a case. *See, e.g., In re Hochberg*, 17 F.Supp.

916 (D.C.Pa.1936); *O'Brien v. Terkel*, 7 B.R. 801, 3 C.B.C.2d 513 (Bkrtcy.S.D.Fla.1980).

■ The Debtor excuses his omissions, in this case, by claiming them to be the result of carelessness, rather than evil intent. He relies on the decision in *O'Brien v. Terkel*, 7 B.R. at 804, 3 C.B.C.2d at 513, in which the court stated:

This Court does not condone carelessness in the preparation of bankruptcy schedules or in complying with all requirements, but the denial of a discharge is a step not to be lightly taken.

*Id.* The Debtor's conduct in this case, however, included numerous omissions of large sums of money. Even if the haste with which the schedules were prepared could excuse these numerous inaccuracies, no carelessness could excuse the Debtor's failure to amend his schedules promptly when he had the leisure to do so. This conduct goes beyond carelessness; it constitutes the "reckless indifference to the truth" that is the equivalent of fraud. *In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969); *In re Mazzola*, 4 B.R. 179, 182 (Bkrtcy.D. Mass.1980).

■ Reliance upon advice of counsel may constitute a defense in a case under this section because it negates the inference of fraudulent intent. *In re Topper*, 229 F.2d 691 (3rd Cir. 1956). Even advice of counsel does not constitute a defense when it is self-evident that the property should be scheduled. *In re Mascolo*, 505 F.2d 274, 277 n.4 (1st Cir. 1974), *citing*, 1A J. Moore and J. Mulder, *Collier on Bankruptcy* ¶ 14.23 n.10 (King ed. 1974).

In this case, Leslie Winter, the Debtor's former attorney testified that he never told the Debtor to exclude from his schedules any of these transfers that fell within the scope of the questions on the Debtor's schedules.

■ Plaintiffs called Mr. Winter as a witness. The Debtor objected to his testimony on the basis of the attorney—client privilege. Rule 501 of the Federal Rules of Evidence requires application of common law privilege. At common law, Maryland had no attorney—client privilege. *E.g., Franklin v. State*, 8 Md.App. 134, 141, 258 A.2d 767 (1969). The legislature created this privilege in 1964. *Md.Cts. & Jud.Proc. Code Ann.* § 9–108 (1974). Maryland law establishes that when a client, through his testimony, puts at issue a specific communication with his attorney, the attorney's testimony becomes admissible because the client has waived his privilege. *Harrison v. State*, 276 Md. 122, 345 A.2d 830 (1975). When the Debtor chose to raise advice of counsel as a defense in this case, he waived the attorney—client privilege.

The Debtor, himself, did not testify that he had told Mr. Winter of specific payments that Mr. Winter then advised him to omit. No possible legal misunderstanding could explain the omission from Item 11 of the Bankruptcy Schedules that in plain language requires the listing of transfers that occurred within the statutory period.

■ The court further finds that the Debtor acted with fraudulent intent because he listed payments upon which the Plaintiffs previously had filed a suit to recover transfers and omitted those payments upon which suit had not been filed. No mere carelessness could create such a coincidence. The Debtor should not then be allowed to excuse his attempts to defraud because they did not succeed in fooling the creditors.

Plaintiffs also seek to deny the Debtor's discharge on the grounds set out in 11 U.S.C. § 727(a)(5), which says discharge may be denied if:

the debtor has failed to explain satisfactorily before the determination of denial of discharge under this paragraph any loss of assets or deficiency of assets to meet the debtor's liabilities.

With the exception of the addition of the words "before determination of denial of discharge under this paragraph," the language of this section is identical to that in § 14(c)(7) of the Bankruptcy Act, and the substantive law in this area appears unchanged.

■ The debtor must not only explain any loss of assets, but must provide an explanation satisfactory to the court. *See In re Solari Furs*, 263 F.Supp. 658 (E.D.Mo. 1967), *aff'd*, 436 F.2d 683 (8th Cir. 1971) (rejecting elaborate, but unsatisfactory, explanations). The instant case contains several incidents in which the Debtor received large sums of cash and was unable to account for their disappearance.

■ The Debtor, by his own testimony, cashed a check for Fifteen Thousand Dollars ($15,000.00) on April 5, 1979. On his schedules, filed in this court on December 3, 1980, and in his testimony at trial, the Debtor said that Ten Thousand Dollars ($10,000.00) of that money was stolen from his car. Although he claims to have reported this theft to the Prince George's County Police, the representative of the Prince George's County Police Department testified that no written record of such a report exists and that Department regulations require an officer to whom such a theft is reported to make a written record of the theft report.

The Debtor, Laurie Gardner, and Victor Nazarian all described the events surrounding this theft. Their versions of the story differed substantially in particulars such as how the loss was discovered and the appearance of the trunk of the Debtor's car. The court finds this story of a theft implausible, particularly because it was never reported to the police. Therefore, the Debtor has failed to explain to the court's satisfaction this loss of Ten Thousand Dollars ($10,000.00) in cash. The Debtor was also unable to account specifically for the other Five Thousand Dollars ($5,000.00), although he testified, generally, that he spent it while taking his children to Florida in a van belonging to one of their relatives.

The Debtor testified that on February 4, 1980, he removed Twenty Thousand Dollars ($20,000.00) from his bank account. On December 3, 1980, the Debtor filed his schedules in this case. Those schedules were to relate back to the filing of the involuntary petition against the Debtor on March 18, 1980. In those schedules, the Debtor stated that he had about Two Hundred Dollars ($200.00) in cash on hand. He was unable to recall exactly how he spent the remainder of the money, thereby failing to explain satisfactorily the loss of approximately Nineteen Thousand Eight Hundred Dollars ($19,800.00) in assets that would have been available to pay creditors.

The facts in the instant case are very similar to those present in *In re Reed*, 11 B.R. 683, 8 B.C.D. 31 (Bkrtcy.N.D.Tex.1981). In that case the debtor could not account for the disposition of Nineteen Thousand Five Hundred Eighty-Six and 83/100 Dollars ($19,586.83) that disappeared in the year preceding the date he filed his petition and the court refused to accept his general explanation that he often carried large amounts of cash and failed to get receipts. *Id.* at 688. Although Mr. Nazarian filed his schedules in response to an involuntary petition and the debtor in *Reed* filed a voluntary petition, this distinction is irrelevant. The Debtor's undisputed testimony is that he was embroiled in financial, legal, and domestic problems in the months preceding the time he filed his schedules. As an experienced business person he should have known that records would be necessary for the conduct of his business and litigation. In addition, in light of the tremendous decline in the value of his corporations that the Debtor claimed, he undoubtedly was aware that bankruptcy was a contemplated possibility, if not a certainty.

Closely related to the issue of whether the Debtor has explained loss of assets under 11 U.S.C. § 727(a)(5), is the issue of whether the Debtor has kept adequate financial records, under 11 U.S.C. § 727(a)(3). Section 727(a)(3) permits denial of discharge if:

the debtor has concealed, destroyed, mutilated, falsified or failed to keep and preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

■ Once the Plaintiffs show that assets have disappeared, or cannot be traced, the burden of persuasion shifts to the Debtor to explain his financial transactions. *See In re Ramos*, 8 B.R. 490, 7 B.C.D. 458, 460 (Bkrtcy.W.D.Wis.1981)

■ The Debtor explained his failure to produce books, records, and other documents relevant to this case by testifying to a housebreaking in which his cassette player and many of his financial documents were stolen. Unlike the incident in which $10,000.00 was allegedly stolen from the Debtor's car, police records do reflect a report of a theft in this case.

The Debtor, Laurie Gardner, and Victor Nazarian described the facts and circumstances surrounding this alleged housebreaking. The accounts given by these three individuals vary widely with regard to particulars such as when and how the break-in was discovered, whether the key to the house was missing, whether there was evidence of forcible entry, which door was apparently used for the thief's entry, and other miscellaneous details. These major discrepancies destroy the credibility of the story of the break-in that forms the basis of the Debtor's explanation for his apparent failure to keep or produce adequate financial documentation.

Leslie Winter's testimony was that the Debtor did not tell him of the occurrence of the break-in until the lunch break during the Debtor's Rule 205 examination. During the morning session of the examination, the Debtor responded to numerous questions about missing records and, according to his own testimony, never mentioned this theft. Had the theft occurred, it seems impossible that the Debtor could have failed to mention it at least to his attorney, if not to his creditors. Therefore, the court finds that the failure to produce books and records results from the Debtor's own actions. *Cf. In re Martin*, 554 F.2d 55 (2d Cir. 1977) (reversing denial of discharge when documents lost while in transit to the debtor, and other sources of information available).

Neither can this failure to produce books and records be justified through any claim that the Debtor did not know of the necessity for keeping books and records or that the size of the business did not warrant detailed record keeping. *See Gunzburg v. Johannesen*, 300 F.2d 40 (5th Cir. 1962) (bankrupt engaged in business with a loss of assets of $100,000.00); *Cf. Matter of Oesterle*, 651 F.2d 401 (5th Cir. 1981) (involving small sole proprietorship). Although the Debtor testified he made all of his records available to the Trustee, and the Trustee testified that he chose not to review them, this testimony does not lead to the inference that those records were complete. The Debtor testified that he made all of his books and records available to the attorneys for the Plaintiffs, who reviewed them in great detail. This testimony merely reinforces the court's conclusion that these records were insufficient if, after exhaustive review, interested parties were still unable to trace the Debtor's financial transactions. No documentation of the transactions through which large quantities of cash disappeared or of transactions that created the alleged precedent debts to the Debtor's relatives has been produced. To the extent that transactions involving large amounts of money remain undocumented, the Debtor has either concealed, destroyed, or failed to keep adequate records. The court is unable to ascertain which of these three courses of action the Debtor followed, but his failure to provide documentation suffices for denial of discharge under 11 U.S.C. § 727(a)(3).

Finally, Plaintiffs oppose the Debtor's discharge on the grounds set out in 11 U.S.C. § 727(a)(2), which is the same, in substance, as § 14(c)(4) of the Bankruptcy Act. Section 727(a)(2) provides that discharge can be denied if

the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition.

■ The court must find intent to defraud in order to deny discharge under this section; a mere transfer will not suffice. *See In re Adlman*, 541 F.2d 999 (2d Cir. 1976). In *Adlman*, the transferror was a housewife who received value for the property she transferred, as when she received Sixty Thousand Dollars ($60,000.00) at the sale of her residence. The Second Circuit reversed because the trial court never considered that she received actual value in exchange for the transferred property and made no findings as to whether the debtor, a housewife, even knew she was insolvent at the time these transfers to outsiders occurred. *Id.* at 1001–02.

■ In this case, in contrast, the Debtor conducted his own business and was aware of his precarious financial condition. There is no documentary evidence to support the testimony of the Debtor and his nephew, Khatchk, that the Debtor's many transfers of money to his relatives were repayments of pre-existing loans. Even if loans were made, which is at best uncertain, the court cannot ascertain if they were equal in value to the transfers claimed to be repayments. One commentator reviews this very situation, stating:

> A fraudulent concealment of assets has been held to exist where the debtor paid alleged debts to relatives while on the verge of insolvency and kept no book from which his true financial condition could be ascertained.

4 *Collier on Bankruptcy* (15th Ed.) § 727.02 at 727–23, *citing, In re Greenberg*, 114 F. 773 (D.C.Conn.1902).

Although the transfer of Ten Thousand Dollars ($10,000.00) to F. Richard Malzone on April 5, 1979, was supposedly to establish a trust to pay support to the Debtor's former wife, pursuant to a support agreement, no part of that apparently legitimate purpose was accomplished. According to the Debtor's own testimony, Mr. Malzone returned all of that money to the Debtor or paid it, at the Debtor's direction, to persons other than the Debtor's ex-wife, Barbara. There is no documentation of any trust agreement.

These transfers to relatives and associates, accompanied by no proof of consideration, create a situation in which the court can, and must, infer an intent to hinder creditors. *See In re Richter*, 57 F.2d 159, 160 (2d Cir. 1932) (discussing transfers to wife with no claim against estate as basis for inferring intent to hinder); *In re Ramos*, 8 B.R. 490, 494–495, 8 B.C.D. 458, 461 (Bkrtcy.W.D.Wis.1981) (discussing gratuitous transfer to wife as basis for denial of discharge).

The number and magnitude of these transfers eliminate any possible finding of mere carelessness that could vitiate the inference of intent. *Cf. In re Lamonte Russell Tuttle*, 15 B.R. 14, 8 B.C.D. 468 (Bkrtcy. D.Kan.1981) (allowing discharge when two small checks deposited accidentally in personal account, rather than business account). These transfers form the basis for denial of discharge under 11 U.S.C. § 727(a)(2)(A).

■ In addition to these prefiling transfers, the Debtor removed from the estate, and used for his own benefit, Forty-Eight Thousand Seven Hundred Seventy-Six and 09/100 Dollars ($48,776.09) that he received after the filing for prefiling work done on the Fort Reno Pumping Station. The Debtor testified that all construction work on the project ended before the filing, although payment was delayed. The Debtor claimed that his attorney advised him to keep the money and, therefore, that he had no improper intent, as 11 U.S.C. § 727(a)(2)(B) requires. Leslie Winter, Debtor's former attorney testified that he merely advised the Debtor of the law regarding pre-petition and post-petition earnings, leaving the Debtor to determine in which category this check belonged. The court accepts Mr. Winter's version of this exchange. The Debtor deposited the check into a personal bank account, commingled the funds with his own money, and exercised dominion and control over it for his own benefit, thereby satisfying the grounds for denial of discharge set out in 11 U.S.C. § 727(a)(2)(B).