In re Raymond J. McQUEEN, Jr., Barbara A. McQueen, Debtors,

Douglas J. WOLINSKY, Esquire, Trustee, Plaintiff,

v.

BRADFORD NATIONAL BANK, Defendant.

Bankruptcy No. 81–253.
Adv. No. 82–24.

United States Bankruptcy Court, D. Vermont.

Dec. 15, 1982.

Jeffrey Taylor, Wells River, Vt., of the Office of Joseph C. Palmisano, Barre, Vt. for debtors.

Douglas J. Wolinsky, Burlington, Vt., trustee, pro se.

David C. Otterman, Bradford, Vt., for Bradford Nat. Bank.

Samuel C. Fitzpatrick, Montpelier, Vt., for Agway, Inc.

## MEMORANDUM AND ORDER ON THE DEBTORS' MOTION FOR REHEARING AS TO EXEMPTION

CHARLES J. MARRO, Bankruptcy Judge.

The instant case arises upon the Motion for Rehearing filed by the Debtors, Raymond J. McQueen, Jr., and Barbara A. McQueen, from the Memorandum and Order of this Court, 24 B.R. 110, on October 22, 1982. In the October 22nd Order, the Court denied the Debtors' claims for exemption to sums that may be "Recovered Preferences," on the basis that the original transfer was voluntary. 11 U.S.C. § 522(g). On rehearing, the Debtors have submitted testimony and additional evidence regarding the voluntariness of the transfer. It is upon such testimony and evidence that the Court makes the following findings:

### FINDINGS OF FACT

On April 11, 1980. Raymond J. McQueen, Jr., and Barbara A. McQueen, the Debtors, executed and delivered to the Bradford National Bank a promissory note and a security agreement. This agreement granted to the Bank a security interest in all livestock (including offspring) now owned and thereafter acquired as security for the loan of $14,874.39, as well as, for any other past, present or future obligations of the Debtors to the Bank. On May 6, 1980, and May 8, 1980, the Bank caused the financing statements describing the aforesaid collateral to be recorded in the Town Clerk's office of Groton, Vermont, and in the Vermont Secretary of State. The execution and delivery of the aforementioned promissory note and security agreement was the free and voluntary act of the Debtors, as conceded by the Debtors.

On April 15, 1981, the Debtors executed and delivered to the Bradford National Bank another promissory note and security agreement. By these documents, the Debtors obtained additional monies and renewed their obligation of April 1980. Through this agreement, the Bank still maintained its security interest in all of the livestock then or subsequently acquired. However, the sum now secured was $22,457.20. The Bank, once again, caused the financing statements to be filed with the Vermont Secretary of State and the Town Clerk of Williamstown, Vermont. Again, as conceded, the Debtors freely and voluntarily executed and delivered the aforementioned note and security agreement.

During November 1981, Debtor, Raymond J. McQueen, Jr., approached the Bradford National Bank to inquire whether it would be possible to obtain additional loan monies in order to purchase feed for the livestock. The Bank, through Mr. Gallerani, its President, indicated that the Bank was reluctant to provide additional funds without first inspecting the cattle. On the following day, Mr. Gallerani and Herbert Grey, an auctioneer, went to the Debtor's farm to inspect the livestock. After inspecting the cattle, Mr. Gallerani indicated to the Debtor that the Bank would not be willing to loan the additional sum. At that time it was suggested that the Debtor consider a sale of his livestock.

Shortly thereafter, the Debtor, Raymond J. McQueen, Jr., executed an auction agreement with Mr. Grey that provided for the sale of 45 head of holstein cows. That evening, Raymond J. McQueen, Jr., informed his wife, Barbara, of the auction agreement and the upcoming sale. During the period between the execution of the auction agreement and the sale on November 27, 1981, the Debtors never objected, nor sought to stop the livestock sale. In fact, Mr. McQueen assisted the veterinarian in preparing the cattle for auction. The Debtor also provided help in loading the cattle for transportation to the auction. As such these acts tend to evidence the free and voluntary manner in which the Debtors made the transfer.

The voluntariness of the transfer is also reinforced by the fact that the Debtors

attended the auction sale of their livestock on November 27, 1981 in East Thetford, Vermont. Once again, no objection was raised by the Debtors, nor did they seek to stop the sale in any manner. Thus, without more, there is no evidence to provide indicia that the transfer was anything other than free and voluntary.

## CONCLUSIONS OF LAW

As was previously stated by this Court in its Memorandum of October 22, 1982, and as found in 11 U.S.C. § 522(g)(1), the Debtors may claim as exempt any proceeds recovered by the trustee in the avoidance of a preference only if the transfer of the property was not a voluntary transfer by the debtor, and the debtor did not conceal such property. This statement of law was similarly espoused by the Courts in *In re Tuttle,* 15 B.R. 14 (Bkrtcy.D.Kan., 1981), *aff'd.,* 16 B.R. 470 (Bkrtcy.D.Kan.1981), and in *Matter of Lamping,* 8 B.R. 709 (Bkrtcy.E.D. Wisc.1981); and this Court concurs with that construction once again.

In the instant case, the Court has found, as stated above, that the transfer of the cattle for auction was the free and voluntary act of the Debtors. As such, they are not now entitled to claim any proceeds recovered by the Trustee, if his action for avoidance of preference should succeed. However, it is not even necessary to consider whether the physical transfer of the cattle was voluntary in view of the concededly, voluntary granting of a security interest in the livestock to the Bank by the Debtors.

As stated in the *Matter of Lamping,* 8 B.R. 709 (Bkrtcy.1981) at 711:

By executing a security agreement on the automobile, the debtors voluntarily transferred an interest in property, namely a security interest, to the lien holder. Although the debtors retained title to the automobile, the title was only a "bare legal title" and the property interest of the debtors, up to the amount of the lien, was transferred to the lien holder for security purposes. This constitutes a transfer under the provisions of the

Bankruptcy Code because as pointed out in the Legislative history to Section 101(40): " . . . a transfer is a disposition of an interest in property. The definition of transfer is as broad as possible. . . ." Senate Report No. 95–989, 95th Cong. 2nd Sess. (1978) 27; House Report No. 95–595, 95th Cong. 1st Sess. (1977) 314 U.S. Code Cong. & Admin.News, 1978, pp. 5787, 5813.

Thus, this Court concludes that the Debtors voluntarily transferred their interest in the cattle to the extent of the lien, upon granting the security interest. Therefore, they are not entitled to the exemption as claimed. This Court further concludes that even if the security interest did not control, the transfer of the cattle for sale by the Debtor was a voluntary transfer, in that the transfer was accomplished by the aid provided by the Debtors and by their lack of resistance. The mere fact that the Debtors disliked having to transfer the livestock for sale does not obviate the voluntariness of the transaction. As stated in *Lamping* at 711; "To allow such exemption claims would give the debtor a windfall which would enable him to benefit from his voluntary act."

## ORDER

Now, therefore, upon the foregoing;

It is ORDERED:

1. That the claims of the Debtors, Raymond J. McQueen, Jr., and Barbara A. McQueen, to "Recover Preferences" in the sums of $5000.00 and $4,400.00, respectfully, under their amended exemptions, upon REHEARING are hereby DENIED.