698 F.2d 883
 8 Collier Bankr.Cas.2d 152, 10 Bankr.Ct.Dec. 212,
Bankr. L. Rep. P 69,083
 In re Ronald A. MARTIN, Debtor.
FIRST FEDERATED LIFE INSURANCE CO. and Dennis E. Quaid, as
Trustee of the Estate of Ronald A. Martin,
Plaintiffs-Appellants,
v.
Ronald A. MARTIN and Alex Martin, Defendants-Appellees.
 No. 81-2605.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 24, 1982.
Decided Jan. 28, 1983.
 
 Louis W. Levit, Levit & Miller, Chicago, Ill., for plaintiffs-appellants.
 David N. Missner, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for defendants-appellees.
 Before CUDAHY and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 This appeal arises from bankruptcy proceedings initiated in 1980 by appellee Martin seeking relief as a voluntary debtor under Title 11 of the United States Code. Appellants First Federated Life Insurance Co. and Dennis E. Quaid, the largest creditor and the trustee of the estate, respectively, filed complaints in the bankruptcy proceeding seeking a denial of discharge because of an alleged concealment of assets. Trustee Quaid also sought to have the disputed assets conveyed to Quaid, as trustee. The bankruptcy court held a consolidated adversary proceeding and, after appellees rested their case at the close of the appellants' case-in-chief, entered judgment for the appellees. The bankruptcy court subsequently granted appellee Ronald Martin a discharge in bankruptcy and this appeal followed.[1] We reverse and remand the judgment below.
 
 I.
 
 2
 The resolution of this case essentially rests on whether or not the appellee Ronald Martin had an interest in a condominium, occupied by Ronald Martin, but asserted to be the property of his father, Alex Martin.[2]
 
 
 3
 At trial, the facts were developed as follows: Ronald Martin testified that, in the aftermath of a divorce in 1975, he sought to locate a place to live which would be a good investment for either him or his father. In early 1976, the property in question, a condominium located in Lincolnwood, Illinois, was purchased for $67,500 of which $15,000 was a cash down payment and the balance the proceeds of a mortgage loan. The note for the mortgage loan was signed by the debtor's parents, Alex and Josephine Martin. Title to the property was held by American National Bank and Trust Company of Chicago under an Illinois land trust of which the beneficial owner was Alex Martin. The bankruptcy court found that Ronald Martin lived in the condominium, paid all mortgage, maintenance, and insurance charges, voted as a condominium owner, and deducted the interest payments on his own federal income tax returns.
 
 
 4
 The ultimate source of the $15,000 used to make the down payment on the condominium has been a matter of some dispute. The bankruptcy court found that the down payment was made in three installments from Alex Martin's checking account. The source of the funds in the checking account was, in turn, documented to be a money market fund account owned by Ronald Martin. At this point, the further source of the funds becomes more confusing. The debtor asserts that the funds in the money market fund account were given to him by his father, Alex Martin. Alex Martin claimed that he had given the $15,000 in cash to his son for the purpose of purchasing the condominium. This transfer took place approximately three months prior to the actual purchase of the condominium. No explanation was given as to why Alex transferred the money in cash so long before the purchase. The appellants assert that the funds used to buy the condominium were, in fact, Ronald's, that the story concerning the $15,000 cash transfer was not credible, and that there was, therefore, a secret agreement between the debtor and his father for the father to hold the property in his own name and that of his wife as nominees for Ronald.
 
 
 5
 The bankruptcy court found that there was no credible proof that the $15,000 which was used to make the down payment was not entirely Ronald's. The court further noted that (referring to the debtor and his father): "Seldom has this Court observed witnesses whose credibility was lower. It was not so much that they appeared to be lying as it was that they seemed to be indifferent to the truth." Jt. Appendix at 98.
 
 
 6
 There is no suggestion that Ronald Martin was insolvent at the time of these transactions. The bankruptcy court also found that Ronald Martin had an income at that time of over $100,000 a year; his father's income, on the other hand, was found to be only approximately $6,000 a year.
 
 II.
 
 7
 It is well settled that findings of fact made in a bankruptcy proceeding will not be set aside by a reviewing court unless "clearly erroneous." Rule 810, Rules of Bankruptcy Procedure;[3] Carini v. Matera, 592 F.2d 378 (7th Cir.1979); In re Woods, 561 F.2d 27 (7th Cir.1977). This is a well-established rule of law rooted on the reasonable thesis that a trial judge is best able to appreciate the nuances of demeanor and evidentiary content that go into determinations of the credibility of witnesses. The facts of this case illustrate the merit of this rule. Due to a lack of documentary evidence, the events and transactions involved here had to be reconstructed largely from oral evidence. The bankruptcy judge, in the course of testimony by the debtor, his father, and other witnesses, was in a unique position to form judgments about what actually may, or may not, have happened. The bankruptcy judge's assessments of credibility, which are critical to the outcome of the case, are based upon personal observation and evaluation of the witnesses which are impossible for us to replicate on appeal. Thus, in a case such as this, we are extremely reluctant to disturb the findings of fact of the bankruptcy judge and would do so only if we thought them clearly erroneous. Therefore, we must conclude that the source of the funds used to buy the condominium was indeed Ronald Martin.
 
 
 8
 We think, however, that the legal principles applied to the facts as found were incorrect, and that this must change the result. There are at least two independent grounds upon which a discharge must be denied to this debtor. First, Section 727(a)(5) of the Bankruptcy Code provides that the court should grant the debtor a discharge, unless "the debtor has failed to explain satisfactorily ... any loss of assets or deficiency of assets to meet the debtor's liabilities." 11 U.S.C. Sec. 727(a)(5) (1980). This provision is substantially the same as Section 14c(7) of the old Bankruptcy Act. 4 Collier on Bankruptcy p 727.08 (L. King ed. 1982). Section 727(a)(5) is broadly drawn and clearly gives a court broad power to decline to grant a discharge in bankruptcy where the debtor does not adequately explain a shortage, loss, or disappearance of assets. Baum v. Earl Millikin, Inc., 359 F.2d 811 (7th Cir.1966); McBee v. Sliman, 512 F.2d 504 (5th Cir.1975); 4 Collier on Bankruptcy p 727.08 (L. King ed. 1982); Bkr.-L.Ed., Summary p 7:134 (1981).
 
 
 9
 In Baum, a case involving a bankrupt real estate broker and contractor, the court upheld the bankruptcy referee's denial of a discharge on the basis that the debtor had failed to adequately explain the shrinkage in his assets in the 21-month period prior to filing for bankruptcy. This court stated that in a case involving the predecessor provision to section 727(a)(5) the bankrupt's explanation "must consist of more than ... [a] vague, indefinite, and uncorroborated hodgepodge of financial transactions." 359 F.2d at 814. This principle seems to us to be directly applicable to the case at hand. See also In re Emmett, 16 B.R. 656 (Bkrtcy.S.D.Fla.1981); In re Kapsos, 16 B.R. 280 (Bkrtcy.S.D.Fla.1981); In re Frank, 14 B.R. 166 (Bkrtcy.S.D.Fla.1981).
 
 
 10
 The case before us is clearly within the terms of section 727(a)(5). The debtor here made virtually no attempt to explain the transaction in question, and, indeed, presented no evidence after the creditors had put on their case-in-chief. The debtor instead chose to rely for his defense on the proposition that the creditors had not made out a prima facie case under their complaint. The debtor, however, essentially ignored paragraph 4 of the complaint filed by each of the appellants. This paragraph of the respective complaints asserts a claim which appears to come precisely within the reach of section 727(a)(5). While it would not constitute a prima facie case under section 727(a)(5) to merely make an allegation of a failure to explain loss or deficiency of assets, see 4 Collier on Bankruptcy p 726.67 (L. King ed. 1982), the creditors here have presented evidence which more than satisfies their burden of proof under this section. Accepting as we do the bankruptcy court's finding that the money used to buy the condominium was Ronald Martin's, there has been a "loss or deficiency" of substantial assets unaccompanied by any explanation from the debtor why such an unusual transaction occurred. In fact, the debtor's explanation, such as it is, seems to dig him deeper into a hole. Martin has persisted in maintaining that he received $15,000 cash from his father. This persistent effort at explanation makes it all the more difficult to accept the bankruptcy court's speculation that the condominium could have been intended as a gift from Ronald to his father. In any event, the creditors satisfied their burden of proof under section 727(a)(5), and we hold that the bankruptcy court should not have granted a discharge given the debtor's failure to satisfy his obligation under that section.
 
 
 11
 In addition, even if this were not a case within the ambit of section 727(a)(5), it would be controlled by 11 U.S.C. Sec. 727(a)(3), under which a continuing concealment of assets is grounds for the denial of a discharge. In fact, the claim most strongly pressed by the appellants has been that the purchase, and subsequent ownership status, of the condominium constituted such a continuing concealment of the debtor's assets. Thus, even if we did not find section 727(a)(5) controlling, section 727(a)(3) would dictate a remand to the bankruptcy court.
 
 
 12
 The reason for this result under section 727(a)(3) lies in the bankruptcy court's incorrect conclusions as to the burden of proof in a dispute over the concealment of assets. The bankruptcy court granted a discharge, despite its finding that Ronald was the source of the down payment, because the bankruptcy court found that the creditors had not adequately proven the existence of an agreement between Ronald and Alex Martin. The court thought that such an agreement was necessary to meet the burden of proof in a case of continuing concealment of assets.
 
 
 13
 It is true that the parties, and the authorities, are agreed that the ultimate burden of proof in a proceeding objecting to a discharge lies with the plaintiff. Rule 407, Rules of Bankruptcy Procedure, Bkr.-L.Ed., Rules Commentary and Analysis Sec. 5:216 (1979). It is also clear, however, that while the plaintiff has the ultimate burden of persuasion in this type of proceeding, the burden of going forward with the evidence is not necessarily similarly assigned. Advisory Committee Notes, Rule 407, Rules of Bankruptcy Procedure. See, e.g., In re Martin, 554 F.2d 55, 58 (2d Cir.1977) ("Regardless where the ultimate burden of persuasion lies, assignment of the initial burden of production depends on the circumstances."); In re Gem Sleepwear Co., 461 F.Supp. 644 (S.D.N.Y.1978); In re Magnusson, 14 B.R. 662 (Bkrtcy.N.D.N.Y.1981). The Advisory Committee Notes leave to the courts "the formulation of rules governing the shift of the burden of going forward with the evidence in the light of such considerations as the difficulties of proving the nonexistence of a fact and of establishing a fact as to which the evidence is likely to be more accessible to the bankrupt than to the objector." Advisory Committee Notes, Rule 407, Rules of Bankruptcy Procedure.
 
 
 14
 While the ultimate burden of proof may rest on the creditors, we think that sufficient evidence was presented by the creditors in this case to satisfy their burden of first going forward with the evidence, and that the burden thereafter of producing additional evidence was shifted to the debtor. The creditors here have proved a transfer of funds by the debtor, with a continuous subsequent use by the debtor of the property acquired with these funds. In In re Kauffman, 675 F.2d 127 (7th Cir.1981), this court found a very similar set of circumstances sufficient to constitute proof of a continuing concealment and denied the debtor in that case a discharge. 675 F.2d at 128. The court stated: "The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property is sufficient to constitute a concealment." 675 F.2d at 128. See also In re Vecchione, 407 F.Supp. 609 (E.D.N.Y.1976). The creditor's proof as to the debtor's actions, while perhaps insufficient to satisfy the ultimate burden of persuasion in the face of a credible explanation by the debtor,[4] is sufficient in this case to shift to the debtor an obligation to come forward with such an explanation of his actions. Unless and until the debtor could provide such a credible explanation, a discharge should have been denied under the continuing concealment provisions of section 727(a)(3).
 
 
 15
 The cases cited by appellee, In re Pioch, 235 F.2d 903 (3rd Cir.1956), In re Groth, 36 F.2d 41 (7th Cir.1929), and In re Viola, 3 B.R. 219 (Bkrtcy.M.D.Fla.1980), are not in conflict with this analysis. These cases all merely reassert the incontestible proposition that the ultimate burden of proof lies with the party objecting to a discharge. We do not intend to lighten the evidentiary burden of the creditor, and indeed may not do so given the clear language of Rule 407. We merely find that, on the facts of this particular case, justice is best served by requiring of the debtor at least a minimally credible explanation of his actions.[5]
 
 
 16
 The case before us is an excellent example of the type of situation contemplated by the Advisory Committee in its notes to Rule 407. It is clearly unsatisfactory to grant the debtor a discharge in a case such as this, where the debtor "stonewalls" the creditor and refuses to credibly explain to the court his puzzling or suspect transactions. The speculation of the bankruptcy judge or the creditors as to what may actually have been occurring is not an adequate substitute for a believable explanation by the debtor. The evidence in this case which could satisfactorily explain the events in question is far more likely to lie in the hands of a debtor than of the creditor. The debtor presumably knows why what is usually a simple matter (either the purchase of a condominium or an intrafamily gift) has taken on such a byzantine character. To the extent that the debtor can explain these events he has an obligation to come forward and do so--he cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation.
 
 III.
 
 17
 Appellants also appeal from the bankruptcy court's failure to enter judgment on Count II of the creditor's complaint, seeking to recover for the estate whatever the debtor's interest in the condominium may be. In light of our decision concerning the burden of proof under Rule 407 in section II of this opinion, and the bankruptcy court's earlier disposition of this case based upon its erroneous legal conclusions, we think that Count II must be reconsidered on remand.
 
 IV.
 
 18
 We therefore reverse the order of September 21, 1981, granting the debtor a discharge. We remand the case for further proceedings not inconsistent with this opinion, including, in the discretion of the bankruptcy court, the reopening of the matter for receipt of additional evidence.
 
 
 
 [1]
 This court has jurisdiction pursuant to 28 U.S.C.A. Sec. 1293 (West Supp.1982). While we note the Supreme Court's recent decision in Northern Pipeline Construction Co. v. Marathon Pipeline Co., the explicitly non-retroactive nature of that opinion leaves our decision in this case unaffected by the Court's findings as to the constitutionality of the 1978 Bankruptcy Act. See Northern Pipeline Construction Co. v. Marathon Pipeline Co., --- U.S. ----, ---- - ----, 102 S.Ct. 2858, 2879-81, 73 L.Ed.2d 598, 625-26 (1982)
 
 
 [2]
 It has apparently been generally assumed by the parties that the property in question has a value substantially in excess of the outstanding mortgage debt upon it, and that if the trustee can establish ownership of it he will be able to generate substantial funds for the benefit of creditors
 
 
 [3]
 The Rules of Bankruptcy Procedure in effect prior to the enactment of the new Bankruptcy Code in 1978 are still applicable to the extent those rules are not inconsistent with the new Code or the amendments effected thereby. See Bankruptcy Reform Act, P.L. 95-498 Sec. 405(d)
 
 
 [4]
 This process of shifting the burden of going forward is somewhat analogous to the procedure applicable in Title VII cases. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)
 
 
 [5]
 We express no opinion as to whether the debtor may ultimately be able to successfully bear this burden