**In re Robert A. HOLSTEIN, Debtor.**

**Jeffrey M. Goldberg & Associates, Ltd., Plaintiff,**

**v.**

**Robert A. Holstein, Defendant.**

**Bankruptcy No. 00 B 18138.**

**Adversary No. 00 A 00876.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 27, 2001.

Bruce C. Scalambrino, Gregg J. Simon & Christopher L. Muniz, Chicago, IL, for Plaintiff.

Barry A. Chatz & Stuart M. Gimbel, Lincolnwood, IL, for Defendant.

## MEMORANDUM OPINION

SUSAN PIERSON SONDERBY, Bankruptcy Judge.

Defendant, Robert A. Holstein, the debtor in this bankruptcy case ("Debtor"), moves to dismiss all counts of the complaint filed against him by Jeffrey M. Goldberg & Associates, Ltd. ("Goldberg"), an alleged creditor of Debtor. Goldberg, in its complaint, seeks the denial of Debtor's discharge as well as a determination of the nondischargeability of Goldberg's particular debt. Unless otherwise indicated, the following facts are taken from Goldberg's complaint and are assumed to be true for purposes of the motion to dismiss, all reasonable inferences being drawn in Goldberg's favor. *See Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–78 (7th Cir.1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996).

## BACKGROUND

1. *Facts Relating to Denial of Discharge*

In early 1997, Debtor was in serious financial trouble. He was an equity partner in the law partnership of Holstein Mack & Klein ("HMK"), which is the subject of a separate Chapter 7 case currently pending before this Court. Debtor had guaranteed a loan to HMK from American National Bank & Trust Company ("ANB"), and the bank was pursuing him on his guarantee. Other creditors, in addition to ANB, were also pursuing Debtor or had already obtained judgments against him.

On March 15, 1997, in the midst of these financial woes, Debtor purported to collaterally assign his personal assets to Barbara Stackler ("Stackler") in exchange for her promise to guarantee a $100,000 bank line of credit to Debtor. Stackler has been described in other court proceedings as Debtor's close personal friend, common law wife, girlfriend, and "significant other." Among the assets assigned to Stackler under the Collateral Assignment Agreement were (i) warrants for 5,000 shares in Metro Golf at $6.00 per share, (ii) Debtor's partnership interest in Bloomfield Hills partnership, (iii) a 10% partnership interest in Wilmette Office Court, (iv) a 3.5% stock interest in CMA Holdings, Inc., (v) a 17% stock interest in Color Me Coffee, and (vi) a 40% stock interest in Cemetery Enterprises, Inc. Thereafter, an amendment to the Collateral Assignment Agreement was executed, in which Debtor purported to assign to Stackler all of the contract rights he had obtained as part of a merger involving Cemetery Enterprises, Inc. Stackler never filed a UCC 1 financing statement perfecting her alleged interest in any of the foregoing assets.

On July 15, 1997, an Assignment in Lieu of Foreclosure Agreement was executed, which falsely recited that Stackler had provided Debtor with a line of credit exceeding $100,000. In the Assignment in Lieu of Foreclosure Agreement, Debtor purported to transfer all of his assets to Stackler.

Finally, on December 15, 1997, a Transfer and Assignment Agreement was executed, which falsely stated that Stackler had provided Debtor with funding of $250,000. In the Transfer and Assignment Agreement, Debtor purported to assign to Stackler, in satisfaction of this alleged debt, any interest he had in his legal cases. Stackler never provided the line of credit or other consideration referred to in the foregoing agreements.

ANB, which obtained a $748,006.39 judgment against both Debtor and HMK in October, 1998, instituted citation proceedings against Debtor and others. Debtor, testifying at a May 4, 1999 citation examination, could not identify with specificity any sums advanced to him by Stackler. Stackler has also been unable to identify any loans. No records of the timing, amount, or repayment of any loans were maintained.

In spite of the purported transfers to Stackler, Debtor continued to retain and exercise ownership and control of the assets. He testified, at his May 4, 1999 citation examination by ANB, that he still maintained ownership of his stock interests in CMA Holding, Inc. and Color Me Coffee. Goldberg alleges that Debtor's ownership interests in these assets continued through the filing of the bankruptcy petition; yet Debtor did not disclose them on his bankruptcy schedules or at the meeting of creditors.

Debtor also retained ownership of his 40% stock interest in Cemetery Enterprises, Inc. As indicated above, that entity was involved in a merger on September 24, 1997, and shares of Carriage Services, Inc. ("CSI") were issued in connection therewith. In spite of the purported transfer of Cemetery Enterprises stock to Stackler under the Assignment in Lieu of Foreclosure Agreement in July, 1997, the CSI shares were issued directly to Debtor. He received 13,993 shares of CSI stock as well as a cash payment exceeding $65,000. In addition, 1,946 shares were escrowed at the time of the merger for his benefit, of which one-half were subsequently issued to Debtor in January, 1998. As of the date of his bankruptcy petition and at least through the date of plaintiff's complaint, the remaining 973 shares continued to be

held in escrow for Debtor's benefit, not Stackler's. These shares were not disclosed on Debtor's schedules or at the meeting of creditors.

Debtor also continued to exercise ownership and control of his partnership interest in Wilmette Office Court. The partnership issued Tax Schedule K–1 to Debtor for 1998, and possibly for subsequent years as well, not to his purported assignee, Stackler. In addition, the partnership's Joint Venture Agreement expressly prohibits Debtor from assigning his interest, and on December 9, 1999, the partnership's managing partner advised Debtor that he could not assign his interest and that the partnership refused to recognize the purported assignment to Stackler. As of the date of Debtor's bankruptcy petition and the date of plaintiff's complaint, Debtor retained ownership of his 10% partnership interest in Wilmette Office Court. He did not disclose that interest on his schedules or at the meeting of creditors.

With respect to Debtor's interest in Bloomfield Hills Partnership, Debtor continued to receive monthly distribution checks after his purported assignment to Stackler. He began endorsing the checks to Stackler in September, 1998, more than a year after the Assignment in Lieu of Foreclosure Agreement. The checks were received by Debtor from Michael L. Sklar, a former partner of Debtor, who stated in a July 21, 1999 response to a citation from ANB that Debtor owns 25% of Sklar's 13.19445% interest in the Bloomfield Hills Partnership. Sklar indicated in his response that he was unaware of any assignment to Stackler. Sklar continued to transmit monthly checks to Debtor until January, 2000, when Sklar began making the checks payable to Stackler. Stackler testified on September 22, 2000 that she did not endorse or utilize the proceeds of the checks in any way. Neither the

Bloomfield Hills partnership interest nor the disposition of the monthly checks was disclosed by Debtor, either in his schedules and statement of financial affairs or at the meeting of creditors in this case.

At his May 4, 1999 citation examination by ANB, Debtor testified that he holds potential legal causes of action against Aaron Robinson, David Epstein, Bruce Goodhart, Jewel Klein, and possibly others. He failed to disclose these causes of action either in his schedules or at the meeting of creditors.

An order was entered on November 22, 1999 by Judge Lefkow, on Goldberg's motion in the HMK bankruptcy case, requiring the general partners to file a statement of personal assets and liabilities pursuant to Rule 1007(g) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Debtor filed his statement on January 9, 2000. He did not list therein his beneficial ownership of the 973 shares of CSI stock, his 10% partnership interest in Wilmette Office Court, his 3.5% stock interest in CMA Holding, Inc., his 17% stock interest in Color Me Coffee, or any of the causes of action that he testified to at his citation examination.

In Count I of its complaint, Goldberg incorporates these factual allegations and asserts that Debtor's discharge should be denied under § 727(a)(2) of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), for fraudulently concealing his ownership of the foregoing assets. Each of the next five counts of the complaint also incorporates the foregoing factual allegations and is based on one of the other subsections of § 727. In Count II, which is based on § 727(a)(3) of the Code, Goldberg alleges that Debtor has failed to maintain and preserve documentation concerning the alleged loans from Stackler as well as documentation concerning his ownership interests in the assets purportedly

transferred to her. Goldberg also alleges that Debtor has attempted to defraud his creditors by willfully and intentionally executing the Collateral Assignment Agreement and the other agreements with Stackler.

Count III is based on § 727(a)(4) of the Code and asserts that Debtor made false statements under oath, with intent to deceive the trustee and creditors, by failing to disclose on his schedules and statement of affairs or at the meeting of creditors in this case his beneficial ownership of the 973 shares of CSI stock, his 10% partnership interest in Wilmette Office Court, his 3.5% stock interest in CMA Holding, Inc., his 17% stock interest in Color Me Coffee, or any of the causes of action that he testified to at his citation examination (the "Omitted Assets"). He further alleges that Debtor willfully and intentionally failed to disclose his transfers of the Bloomfield Hills partnership checks to Stackler.

Count IV is based on § 727(a)(4)(D) of the Code and alleges that Debtor willfully, intentionally, and with intent to defraud the trustee withheld recorded information, including documentation evidencing his current ownership interests in the Omitted Assets. In Count V, Goldberg alleges that Debtor knowingly, willfully, and intentionally failed to explain his alleged transfer of assets to Stackler and that he failed to document the alleged loans or otherwise explain why he transferred assets to her for no consideration.

The last of the denial of discharge counts is Count VI, which is based on § 727(a)(6)(A) of the Code. Goldberg alleges that Debtor willfully disregarded Judge Lefkow's order requiring a statement of personal assets and liabilities pursuant to Bankruptcy Rule 1007(g), because he filed a statement that was intentionally false and fraudulent, in that it failed to disclose his ownership interests in the Omitted Assets.

## 2. *Facts Relating to Dischargeability of Debt*

The remaining five counts are all based on § 523(a) of the Code and seek a determination that the debt owed to Goldberg is nondischargeable. These counts incorporate only a few of the prior allegations and are founded primarily on additional facts set forth in Count VII concerning Goldberg's alleged debt. Goldberg states that it was approached by Debtor and his partners in 1995 concerning a possible co-counsel arrangement for certain contingent fee litigation that HMK was involved in relating to the Norplant contraceptive device (the "Norplant Litigation"). Debtor proposed that Goldberg join as co-counsel and receive 30% of any fees and costs recovered. Goldberg would be liable for 30% of the litigation costs going forward, capped at $800,000. Inasmuch as substantial fees and costs had already been expended in the litigation, Debtor and his partners proposed that Goldberg pay $1,000,000 as its pro rata share of the fees and costs previously expended. This sum would then be used to help pay the ongoing costs associated with the Norplant Litigation.

At the time of these negotiations, HMK was experiencing severe financial difficulties, including, *inter alia,* defaults on its rental payments to its landlord and defaults on its line of credit and/or operating loans from ANB. Debtor knowingly misrepresented to Goldberg that HMK's financial condition was sound and that it was going to be able to continue to operate as a going concern and to represent its clients, including those involved in the Norplant Litigation. Debtor failed to disclose to Goldberg, *inter alia,* that both ANB and HMK's landlord were making

demands for payment, that HMK was not paying its trade debt as it came due, that ANB was closely monitoring HMK's finances and its progress on its case files, that HMK was desperate for an infusion of capital, and that HMK was not going to be able to continue to represent its clients, including those in the Norplant Litigation, and operate as a going concern. In reliance on Debtor's alleged misrepresentations, Goldberg, on August 1, 1995, entered into an agreement with HMK (the "Co–Counsel Agreement") in which Goldberg agreed to act as co-counsel in the Norplant Litigation and to pay the sum of $1,000,000 as its pro rated share of fees and costs previously expended therein. Goldberg alleges that if it had been informed of HMK's true financial condition, it would not have entered into the Co–Counsel Agreement, paid the sum of $1,000,000, or agreed to be liable for the Norplant Litigation costs.

Goldberg alleges that Debtor intended to deceive Goldberg and fraudulently induced it into entering into the Co–Counsel Agreement. Debtor's fraud became apparent when Goldberg discovered that Debtor paid to ANB, within days of executing the Co–Counsel Agreement and receiving the $1,000,000 thereunder, the sum of $500,000 to reduce his personal guarantee of HMK's debt. The balance of the funds, which were to be used to fund the Norplant Litigation, have not been accounted for by Debtor. Goldberg claims that Debtor knowingly and maliciously converted Goldberg's funds for his own use by fraudulently inducing Goldberg to enter into the Co Counsel Agreement and that the deliberate misrepresentations and omissions concerning HMK's financial condition constitute actual fraud within the purview of § 523(a)(2)(A) of the Code. Goldberg relies on the same allegations in Count VIII to state a claim for false pretenses and in Count IX to state a claim for false representations, each under § 523(a)(2)(A).

In Count X, Goldberg seeks a determination that its debt is nondischargeable under § 523(a)(6) of the Code. It alleges that Debtor willfully and maliciously fraudulently induced it into entering into the Co–Counsel Agreement and willfully and maliciously misrepresented and omitted material facts concerning HMK's financial performance. Finally, Goldberg seeks a determination of nondischargeability under § 523(a)(4), based on the same allegations, claiming that the misrepresentations and omissions constitute a breach of fiduciary duty by Debtor.

## DISCUSSION

■ A complaint may not be dismissed under Rule 12(b)(6), made applicable herein by virtue of Bankruptcy Rule 7012(b), unless no relief may be granted under any set of facts that could be proved consistent with the allegations in the complaint. *Walker v. National Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir.1999). In ruling on the motion, the court must accept as true all facts alleged in the complaint, and it draws all reasonable inferences from those facts in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–78 (7th Cir.1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996). However, the court is not compelled to accept conclusory allegations regarding the legal effect of facts set out in the complaint. *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996).

### 1. *Denial of Discharge: Counts I through VI*

The provision upon which Goldberg relies in Count I of its complaint, § 727(a)(2) of the Code, provides that a discharge shall be denied if

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

    (A) property of the debtor, within one year before the date of the filing of the petition; or

    (B) property of the estate, after the date of the filing of the petition ...

Debtor urges that because the transfers to Stackler took place more than one year before the bankruptcy petition, this provision cannot serve as a ground for denial of his discharge. As Debtor acknowledges in his reply memorandum, however, a continuing concealment of property is also within the reach of this provision.

■■■ Two elements must be established to warrant denial of discharge under § 727(a)(2), viz., "an act (i.e., a transfer or a concealment of property) and an improper intent (i.e., a subjective intent to hinder, delay, or defraud a creditor)." *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir.1993); *see also Keeney v. Smith (In re Keeney),* 227 F.3d 679, 683 (6th Cir.2000). If both of these elements are proven to have existed during the one-year period prior to bankruptcy, the discharge will be denied. *Rosen,* 996 F.2d at 1531. Accordingly, where property is transferred more than one year before bankruptcy, a discharge may nonetheless be denied if the concealment of any retained interest in that property continues into the statutory one-year period, coupled with the requisite intent. "[A]s long as the debtor allow[s] the property to remain concealed into the critical year," the continuing concealment doctrine will apply. *Id.; see also Keeney,* 227 F.3d at 684. In such a situation, the "failure to reveal" constitutes concealment. *Rosen,* 996 F.2d at 1531.

In *Friedell v. Kauffman (In re Kauffman),* 675 F.2d 127 (7th Cir.1981), a debtor had transferred his residence to his wife more than one year prior to bankruptcy, but he continued to live in the home, continued to make mortgage, tax, and insurance escrow payments, listed the home on personal financial statements, and took out loans using the house as collateral. *Id.* at 128. The Court held there was adequate evidence to show a retention of beneficial interest into the statutory period, stating, "The transfer of title with attendant circumstances indicating that the bankrupt continues to use the property as his own is sufficient to constitute a concealment." *Id.* With respect to the intent requirement, the Seventh Circuit stated that "[i]ntent ... 'must be gleaned from inferences drawn from a course of conduct.' " *Id.* (quoting from *Matter of Vecchione,* 407 F.Supp. 609, 615 (E.D.N.Y.1976)); *see also In re Snyder,* 152 F.3d 596, 601 (7th Cir. 1998) (evidence of debtor's intent may be inferred from circumstances surrounding objectionable conduct). The Court in *Kauffman* inferred the requisite intent from proof that the transfer was made specifically to avoid a judgment and that Mrs. Kauffman's signature was forged on the documents. *Id.*

Similarly, in *First Federated Life Insurance Co. v. Martin (In re Martin),* 698 F.2d 883 (7th Cir.1983), the debtor provided the down payment for a condominium which was purchased, more than one year before bankruptcy, in his father's name. The debtor, however, lived in the condominium, paid all mortgage, maintenance, and insurance charges on the property, voted as a condominium owner, and deducted the interest payments on his tax returns. The Court held that the discharge should have been denied under

§ 727(a)(2), quoting the language from *Kauffman* that a transfer of title, with attendant circumstances indicating the debtor continues to use the property, is sufficient to constitute a concealment. *Martin*, 698 F.2d at 887. The Court explained that it was not the creditors' burden to prove the existence of an agreement between the debtor and his father (e.g., to reconvey the property to debtor). While the ultimate burden of persuasion lies with the plaintiff in such a case, the burden of going forward with the evidence depends on the circumstances. *Id.* The creditors in *Martin* had proved a transfer of funds by the debtor, with a continuing use by the debtor of the property acquired with those funds. This proof was sufficient to shift to the debtor the burden of providing a satisfactory explanation of the transfer. Unless and until such a satisfactory explanation could be provided, there was a continuing concealment warranting denial of discharge. *Id.*

In this case, the allegations of continuing concealment are sufficient to withstand dismissal. The agreements with Stackler show a transfer to her of the Omitted Assets; yet, taking Goldberg's allegations as true, Debtor retained ownership, use, and control of all or at least a portion of his stock and partnership interests. He still maintains his stock interests in CMA Holding, Inc. and Color Me Coffee. He also received the shares and consideration for his Cemetery Enterprises, Inc. stock in the merger with CSI, and 973 shares continue to be held for his benefit, notwithstanding the transfer to Stackler. He received Tax Schedule K–1 with respect to his interest in Wilmette Office Court, and the partnership refuses to recognize the purported transfer to Stackler. With respect to the Bloomfield Hills partnership, Debtor continued to receive the monthly checks notwithstanding the purported transfer to Stackler, and although he ultimately began endorsing the checks to her, Stackler testified that she did not endorse or utilize the proceeds of the checks in any way. These allegations are sufficient to show a concealment within the purview of § 727(a)(2), as there was a purported transfer of ownership with attendant circumstances indicating that Debtor continued to control or use the property.

The requisite intent is also adequately alleged. Again, intent may be gleaned from inferences drawn from a course of conduct. *Kauffman*, 675 F.2d at 128. Goldberg has alleged that at the time of the transfers to Stackler, Debtor was being pursued by ANB on his guarantee, and other creditors were also pursuing him or had already obtained judgments. An improper intent at the time of the transfer, though outside the one-year statutory period, may provide some evidence of improper intent during the year prior to bankruptcy. *Rosen*, 996 F.2d at 1533. Sufficient facts are alleged to show an intent to hinder, delay, or defraud creditors at the time of the alleged transfers to Stackler. Additional allegations relevant to intent include, *inter alia*, Debtor's failure to disclose the assets on his schedules or at the meeting of creditors. The plaintiff's allegations are sufficient to prevent dismissal of Count I. *See Keeney*, 227 F.3d at 683–84 (affirming finding of intent where transfers made while judgment pending and property omitted from schedules).

It should be noted that Debtor emphasizes his transfer of the Omitted Assets was disclosed at the May 4, 1999 citation examination taken by ANB. However, what is critical under the continuing concealment doctrine is "whether there is a concealment of *property*, not whether there is concealment of a transfer." *Rosen*, 996 F.2d at 1532 (emphasis in original). The property concealed is the inter-

est retained by the debtor in the property purportedly transferred; disclosure of the transfer itself is not tantamount to disclosure of the ownership interest retained in the property after the transfer. *See, e.g., March v. Sanders (In re Sanders)*, 128 B.R. 963, 970 (Bankr.W.D.La.1991) (recordation of trust documents did not preclude finding of concealment where there was no recordation of debtor's continued use and enjoyment of property *after* transfer).

Denial of discharge is also sought under § 727(a)(5), which provides that a discharge may be barred where the debtor "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Under this provision, vague and uncorroborated statements concerning the disposition of assets will not suffice. *See In re D'Agnese*, 86 F.3d 732, 734 (7th Cir.1996); *Martin*, 698 F.2d at 886. The debtor must satisfactorily support his explanation of what happened to his property. *D'Agnese*, 86 F.3d at 735. In *Martin*, the debtor made virtually no attempt to explain a suspect transaction, in which he provided a $15,000 down payment for real estate purchased in his father's name. *Martin*, 698 F.2d at 886. He claimed instead that the creditors had not made out a prima facie case under § 727(a)(5). The Court explained that while a mere conclusory allegation of failure to explain loss of assets would not suffice, proof that the down payment for the property came from the debtor established the requisite loss or deficiency, "unaccompanied by any explanation from the debtor why such an unusual transaction occurred." *Id.* The burden then shifted to the debtor to provide a credible explanation for the transaction. In such a situation, the relevant evidence ... is far more likely to lie in the hands of a debtor than of the creditor. The

debtor presumably knows why what is usually a simple matter ... has taken on such a byzantine character. To the extent that the debtor can explain these events he has an obligation to come forward and do so-he cannot abuse the bankruptcy process by obfuscating the true nature of his affairs and then refusing to provide a credible explanation. *Id.* at 888; *see also Sicherman v. Murphy (In re Murphy)*, 244 B.R. 418 (Bankr. N.D.Ohio 2000) (vague and unsupported testimony concerning loss of $54,000 through gambling and drinking bouts failed to satisfy obligation to account for disposition of assets).

Count V of Goldberg's complaint contains more than a mere conclusory allegation of failure to explain loss of assets. It specifically alleges that assets were transferred to Stackler for no consideration, with a continuing ownership interest and use by Debtor. It further alleges that Debtor failed to explain the transfer and failed to document the alleged loans from Stackler or otherwise explain why the assets were transferred for no consideration. Taking these allegations as true, as the Court must, they are sufficient to state a claim under § 727(a)(5).

Count III, based on § 727(a)(4)(A) of the Code, is also sufficient to state a claim upon which relief may be granted. That section provides for denial of discharge where the debtor knowingly and fraudulently makes a false oath or account. In order to obtain relief under this provision, a creditor must establish that (1) the debtor made a statement under oath, (2) the statement was false, (3) he knew the statement was false, (4) he made the statement with intent to defraud creditors, and (5) the statement related materially to the bankruptcy case. *Keeney*, 227 F.3d at 685; *Legum v. Murray (In re Murray)*, 249 B.R. 223, 228

(E.D.N.Y.2000); *Painewebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 437 (S.D.N.Y.1996). A matter is material for these purposes if it bears a relationship to the debtor's business transactions or estate or leads to the discovery of assets, business dealings or existence or disposition of property. *Korte v. Internal Revenue Service (In re Korte)*, 262 B.R. 464, 474 (8th Cir. BAP 2001); *Murray*, 249 B.R. at 230; *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 574 (Bankr.N.D.Ill. 2000); *Sanders*, 128 B.R. at 972. The determination whether a false oath has been made is a question of fact, *Keeney*, 227 F.3d at 685, and the requisite intent may be inferred from the facts and circumstances. *Id.; Korte*, 262 B.R. at 474; *In re Dubrowsky*, 244 B.R. 560, 573 (E.D.N.Y. 2000); *Senese*, 245 B.R. at 575. The intent to defraud may involve a material representation known to be false or, "what amounts to the same thing, an omission that you know will create an erroneous impression." *In re Chavin*, 150 F.3d 726, 728 (7th Cir.1998); *Keeney*, 227 F.3d at 685. The intent requirement is satisfied if there is a reckless disregard or indifference to the truth. *Chavin*, 150 F.3d at 728; *Keeney*, 227 F.3d at 686; *Senese*, 245 B.R. at 575.

In *Keeney*, the debtor transferred property to his parents but retained a beneficial interest in the property, occupying it as his residence and making all mortgage payments. He failed to list the property in his schedules, and the Court upheld denial of his discharge based on § 727(a)(4)(A), notwithstanding the debtor's claim that he no longer owned the property. *Keeney*, 227 F.3d at 686. Discharge has been denied in other cases where such a retained beneficial ownership interest is omitted from the schedules. *See, e.g., Korte*, 262 B.R. at 474; *Sanders*, 128 B.R. at 973.

■ In this case, it is alleged that Debtor omitted from his schedules and from his testimony at the meeting of creditors his retained interests in the Omitted Assets. Taking these allegations as true, the omissions are clearly material, as they relate to the existence and disposition of assets, and they created a false impression of Debtor's financial situation. Debtor's intent can be inferred from the circumstances and his course of conduct, beginning with the initial transfers to Stackler and continuing through the omissions from the schedules and from his testimony at the meeting of creditors.

It is not necessary for the Court to take judicial notice, as urged by Goldberg, of the order entered in the state court fraudulent transfer action brought by ANB or to consider whether such an order has collateral estoppel effect in this case as to issues of ownership, intent, or otherwise. As discussed above, the facts alleged are sufficient to show that Debtor retained an ownership interest in the Omitted Assets, which should have been listed on his schedules in this case.

■ Debtor contends that Count III must fail because he was merely taking a legal position in omitting the assets from his schedules. Debtor, however, had an absolute duty to report the Omitted Assets, even if he believed that they were unavailable to the bankruptcy estate. *See In re Yonikus*, 974 F.2d 901, 904 (7th Cir.1992) (interpreting similar requirements under § 727(d)(2)). Moreover, reasonable inferences from the facts alleged in the complaint indicate that Debtor knew the assets were available to the estate or at least acted with reckless indifference to the truth in that regard.

■ Debtor's primary argument for dismissal of Count III is that he adequately disclosed the Omitted Assets by virtue

of a reference he made, in his statement of financial affairs, to the state court fraudulent transfer action brought by ANB. In an attachment to the statement of affairs, Debtor listed eleven lawsuits by name and case number, including the name and case number of the action brought by ANB and the court in which it was pending. No description of the nature of the suit, much less of the Omitted Assets themselves, was included.

This purported "disclosure" falls far short of the full and complete disclosure required of debtors in order to obtain their discharge. The purpose of § 727(a)(4)(A) is to ensure that adequate information is provided to those interested in the administration of the estate without the need of independent examinations or investigations to verify its accuracy and completeness. *See Korte,* 262 B.R. at 474; *Dubrowsky,* 244 B.R. at 572; *Gollomp,* 198 B.R. at 437. The listing of the ANB case name and number called for just such independent investigation; the trustee would have to examine the state court record to learn the nature of the suit and to discover that assets had been omitted from the schedules. Although not necessary to this ruling, the Court takes judicial notice of the fact that the trustee in this case filed a no-asset report on August 1, 2000 and obtained entry of an order vacating it on January 24, 2001, after he learned of the Omitted Assets. The omission from the schedules clearly may create a false impression about the Debtor's financial situation which is not cured by the listing of the ANB case name and number in the attachment to Debtor's statement of affairs.

Debtor also cites *Gollomp* and *First Security Bank of Helena v. Hirengen (In re Hirengen),* 112 B.R. 382 (Bankr.D.Mont. 1989), in support of his argument that the listing of the ANB case name and number negates any inference of fraudulent intent

and satisfies his burden of disclosure as a matter of law. In each of those cases, however, the property was actually described in another schedule, without the need for any further investigation or examination. *See Gollomp,* 198 B.R. at 438; *Hirengen,* 112 B.R. at 384–85. Accordingly, intent to defraud could not be inferred. In *Hirengen,* the court stated that it appeared the debtors were simply unsophisticated and poorly counseled by their attorney in completion of the bankruptcy papers. *Hirengen,* 112 B.R. at 386.

This is not a case where property omitted from one schedule was adequately described in another. Nor is it a case involving an unsophisticated debtor with poor counsel; Debtor himself is an attorney. His argument that disclosure of the ANB case name and number negates the requisite fraudulent intent as a matter of law is without merit.

Count II is based on § 727(a)(3), which provides for denial of discharge where the debtor has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information ... from which the debtor's financial condition or business transactions might be ascertained," unless the failure was justified under all the circumstances. The purpose of this provision is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. *Peterson v. Scott (In re Scott),* 172 F.3d 959, 969 (7th Cir.1999) The debtor has an affirmative duty to create books and records accurately documenting his business affairs, *Scott,* 172 F.3d at 969, and he is required to keep and produce written documentation for all of his business transactions. *Brandt v. Carlson (In re Carlson),* 231 B.R. 640, 655 (Bankr.N.D.Ill. 1999), *aff'd, Carlson v. Brandt,* 250 B.R. 366 (N.D.Ill.2000); *aff'd, In re Carlson,* 263 F.3d 748 (7th Cir.2001); *see also Rio*

*Grande Valley Bank v. Waldroop (In re Waldroop)*, 22 B.R. 284 (Bankr.D.N.M. 1982) (discharge denied where documentation insufficient to establish disposition of $65,000 loan proceeds). The adequacy of the records is a question of fact and will depend on whether the debtor's financial condition and business transactions for a reasonable period in the past can be ascertained with substantial completeness and accuracy. *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996); *Leverage Leasing Corp. v. Reitz (In re Reitz)*, 69 B.R. 192, 197 (N.D.Ill.1986); *National City Bank, Marion v. McNamara (In re McNamara)*, 89 B.R. 648, 653 (Bankr.N.D.Ohio 1988) When the debtor is involved in business dealings, he is held to a higher standard of record-keeping. *Koushel v. Snow (In re Snow)*, 1993 WL 428677, *4 (N.D.Ill.1993); *Union Planters Bank, N.A. v. Connors (In re Connors)*, 254 B.R. 230, 235 (Bankr.S.D.Ill. 2000).

Goldberg does more than merely recite the statutory language, but specifically alleges, *inter alia,* a failure to preserve or maintain records documenting the alleged loans from Stackler. The transfers to Stackler were substantial, and without the records concerning the alleged consideration for the transfers and the disposition of such consideration, the trustee and creditors may be unable to trace the transactions with the completeness and accuracy that are required under this provision. In addition, Count II is based on the willful and intentional execution of the Collateral Assignment Agreement and the other transfer agreements with Stackler. If these agreements contain false statements concerning the consideration received for the transfers, there may also be a falsification of recorded information within the meaning of the statute. Taking the allegations of Count II as true, they are sufficient to withstand dismissal under Rule 12(b)(6).

Debtor also seeks dismissal of Count IV, which alleges that Debtor knowingly, willfully, and intentionally withheld recorded information from the trustee, warranting denial of discharge pursuant to § 727(a)(4)(D) of the Code. This count does little more than recite the statutory language in conclusory terms. Although Goldberg states that the recorded information allegedly withheld included documentation of Debtor's ownership interests in the Omitted Assets, Goldberg fails to allege that any such documents were ever requested by the trustee. If the documents were never requested, and absent any allegations of active concealment of such documents, there cannot be a claim of knowing and fraudulent withholding. Accordingly, Count IV must be dismissed.

Finally, Count VI, which seeks denial of discharge under § 727(a)(6)(A), is based on Debtor's alleged failure to comply with Judge Lefkow's order in the HMK case directing the partners to file statements of personal assets and liabilities pursuant to Bankruptcy Rule 1007(g). Under § 727(a)(6)(A), discharge is denied where the debtor refuses in his case "to obey any lawful order of the court, other than an order to respond to a material question or to testify." If Debtor's conduct falls within the scope of § 727(a)(6)(A), then under § 727(a)(7) he may be denied a discharge even if the conduct did not occur in his own bankruptcy case, as long as it occurred in connection with the bankruptcy case of an insider. *In re Krehl*, 86 F.3d 737, 741 (7th Cir.1996).

HMK is an insider of Debtor under § 101(31) of the Code, because Debtor was a partner in HMK. Accordingly, the issue is whether Debtor's conduct in omitting the subject assets from his personal statement of assets and liabilities,

filed pursuant to court order in the HMK case, constitutes a refusal to obey within the purview of § 727(a)(6)(A).

Debtor asserts that there is no basis for finding a "refusal" to obey, emphasizing the recognized distinction between "failure" and "refusal." This distinction, however, does not advance Debtor's position. While a "failure" to obey that results from inadvertence, mistake, or inability to comply will not warrant denial of discharge, *see In re Tieszen*, 1999 WL 669263, *5–6 (Bankr.N.D.Ill.1999), a willful or intentional disobedience or dereliction will constitute a refusal within the proscription of the statute. *Id.* (citing 6 L. King, *Collier on Bankruptcy* ¶ 727.09[1] at 727–50 (15th ed.1999)).

Goldberg alleges that Debtor willfully and intentionally disregarded Judge Lefkow's order by filing a statement of personal assets and liabilities that did not disclose his ownership interests in the Omitted Assets. Taking these allegations as true, they are sufficient to state a claim for refusal to obey a court order within the purview of § 727(a)(6)(A) and (a)(7).[1]

### 2. *Dischargeability of Debt: Counts VII through XI*

In the remaining counts of the complaint, Goldberg seeks a determination that the debt allegedly owed to him by Debtor is nondischargeable under § 523 of the Code. The first three of these counts are based on § 523(a)(2)(A), which provides an exception to discharge for debts:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...

Debtor contends that these first three dischargeability counts, numbered VII through IX, fail to state a claim upon which relief may be granted, because the misrepresentations upon which Goldberg relies all relate to the financial condition of HMK, an insider of Debtor. As such, those statements are actionable only under § 523(a)(2)(B), which requires that misrepresentations concerning financial condition be in writing.[2]

■■■ Sections 523(a)(2)(A) and 523(a)(2)(B) are mutually exclusive. *See* 124 Cong.Rec. H11095–96 (daily ed. Sept. 28, 1978); S17412 (daily ed. Oct. 6, 1978); *Interserv, L.P. v. Beigel (In re Beigel)*, 2000 WL 562580, *3 (Bankr.N.D.Ill.2000);

---

1. Debtor's further assertion that Count VI must be dismissed because Goldberg failed to cite § 727(a)(7) is without merit. A plaintiff cannot plead himself out of court by citing to the wrong legal theory or failing to cite any theory at all. *See Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134–35 (7th Cir.1992); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir.1999); *Ryan v. Illinois DCFS*, 185 F.3d 751, 764 (7th Cir.1999). Here, Goldberg correctly cited to § 727(a)(6)(A), and he alleged facts sufficient to establish that Debtor was an insider of HMK, the debtor in whose bankruptcy case the order was entered. These allegations, together with those referenced above, are sufficient to withstand dismissal.

2. Section 523(a)(2)(B) excepts from discharge debts

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> ...
>
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive ...

*Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr.S.D.N.Y.1999); *Gehlhausen v. Olinger (In re Olinger)*, 160 B.R. 1004, 1007 (Bankr.S.D.Ind.1993). In considering whether a particular representation is actionable only under § 523(a)(2)(B) and therefore requires a writing, it must be determined whether the representation is a "statement ... respecting ... financial condition." While some courts opt for a broad interpretation of this phrase, *see, e.g., Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir.1984) (representation that property to be pledged as collateral was free and clear of liens); *Connecticut National Bank v. Panaia (In re Panaia)*, 61 B.R. 959 (Bankr. D.Mass.1986) (statement regarding amount of debt owed to bank), others advance a narrow construction, limiting the phrase to statements concerning the debtor's (or insider's) overall net worth or earning capacity, or statements describing the overall economic condition of the entity. *See, e.g., Olinger*, 160 B.R. at 1011; *Alicea*, 230 B.R. at 504. .

According to Goldberg's allegations, Debtor knowingly misrepresented that HMK's financial condition was sound and that it was going to be able to continue to operate as a going concern and to represent its clients, including those involved in the Norplant Litigation. Debtor failed to disclose to Goldberg, *inter alia*, that HMK was not paying its trade debt as it came due, that it was in default to both ANB and its landlord, each of whom were making demands for payment, that HMK's financial condition was such that ANB was closely monitoring HMK's finances and its progress on its case files, and that HMK was desperate for an infusion of capital. The alleged misrepresentations would fall within the "financial condition" category regardless of whether a broad or narrow construction of that term is employed. Indeed, Goldberg itself refers to them re-

peatedly as "misrepresentations and omissions of material facts concerning HMK's financial condition."

Goldberg argues that even though the misrepresentations relate to HMK's financial condition, they are actionable under § 523(a)(2)(A) under the reasoning in *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598 (9th Cir. BAP 1998). In that case, the debtors induced the plaintiff to enter into a contract for the sale of his residence based on misrepresentations concerning, *inter alia*, the amount of the debtors' income, their ownership of equipment, the value of one particular item of equipment, and their ability to service the debt on the residence. *Id.*, at 605. The appellate panel accepted the bankruptcy court's finding that the statements concerned the debtors' "financial condition" and upheld the court's determination that the allegations failed under § 523(a)(2)(A) and (B) because they were not in writing. *Id.* at 605–06. However, in another count of the complaint, the creditor had incorporated the same allegations and further alleged that the debtors' promise to perform under the contract to purchase the residence was knowingly false when made and that they knew they had no ability to perform. In upholding the count as stating a claim for false pretenses under § 523(a)(2)(A), the appellate panel explained that the fraudulent misrepresentation was the fraudulent promise to perform under the contract, not the statements concerning financial condition; however, the statements concerning financial condition could be considered as part of the surrounding facts and circumstances tending to establish that the debtors had no present intention to perform. *Id.* at 606–07.

The allegations of Goldberg's complaint fail to state a claim under the reasoning in *Barrack*. Unlike *Barrack*, virtually all of

the allegations made in Counts VII through IX constitute allegations relating to financial condition, and not allegations of fraudulent promise. The Court does not express an opinion as to Goldberg's ability to allege facts sufficient to support a fraudulent promise claim but merely holds that Counts VII through IX of the current complaint do not state a claim upon which relief may be granted.

In Count X, Goldberg attempts to bring essentially the same claim under § 523(a)(6), which bars discharge of debts arising out of "willful and malicious" injuries to persons or property. While §§ 523(a)(2) and 523(a)(6) are not mutually exclusive, *see, e.g., In re Printy v. Dean Witter Reynolds,* 110 F.3d 853, 857–58 (1st Cir.1997); *Casey v. Transport Life Insurance Co.,* 162 B.R. 150, 155 (Bankr.N.D.Ill. 1993), plaintiffs whose claims are based solely on oral misrepresentations of financial condition should not be allowed to side-step the writing requirement of § 523(a)(2)(B) by attempting to bring the same cause of action as a willful and malicious injury claim under § 523(a)(6). *Alicea,* 230 B.R. at 508. Accordingly, even if the injury alleged by Goldberg were found to be of the type contemplated by § 523(a)(6) and Debtor's alleged conduct were "willful and malicious" within the special meaning of the statute, Count X nonetheless fails to state a claim and must be dismissed.

Finally, Goldberg asserts in Count XI that its debt is nondischargeable as one for Debtor's fraud or defalcation while acting as a fiduciary within the meaning of § 523(a)(4) of the Code. Count XI, however, contains no allegations whatsoever identifying a trust or other relationship giving rise to a fiduciary duty. For this reason alone, Count XI must be dismissed. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 978 (7th Cir.1999).

Moreover, the alleged joint venture, co-counsel relationship that Goldberg argues gave rise to fiduciary obligations was insufficient to establish fiduciary capacity within the meaning of § 523(a)(4). In this circuit, § 523(a)(4) "reaches only those fiduciary obligations in which there is substantial inequality in power or knowledge in favor of the debtor seeking the discharge and against the creditor resisting discharge...." *In re Woldman,* 92 F.3d 546, 547 (7th Cir.1996) (citing *In re Marchiando,* 13 F.3d 1111, 1116 (7th Cir.1994)) A joint venture between equals does not constitute a fiduciary relationship for purposes of § 523(a)(4). *In re Frain,* 230 F.3d 1014, 1017 (7th Cir.2000) (citing *Woldman*) In *Woldman,* the creditor was an attorney who referred a case to the debtor, another lawyer, under an agreement to share attorney's fees. The debtor failed to pay the creditor his portion of the fees and then filed a bankruptcy petition. The Seventh Circuit held the debt for such fees discharged, explaining that the relationship was "... at the opposite end of the spectrum of fiduciary obligations from the case in which a trustee defrauds a child beneficiary or a lawyer defrauds a client or a general partner defrauds a limited partner." *Woldman,* 92 F.3d at 547.

In this case, as in *Woldman,* Debtor and Goldberg were on an equal footing. Accordingly, even if they were joint venturers, there was no fiduciary capacity within the meaning of § 523(a)(4). Moreover, the relationship was entered into contemporaneously with the creation of the alleged debt. To qualify for special treatment under § 523(a)(4), the relationship must exist independent of the wrong alleged. *In re Marchiando,* 13 F.3d at 1115–16. For these additional reasons, Count XI must be dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted as to Count IV and Counts VII through XI and is denied as to the remaining counts of the complaint. Goldberg is given leave to amend the complaint within 14 days of the entry of the order accompanying this opinion, and Defendant is directed to file an answer or otherwise plead to the current complaint, or if timely amended, the amended complaint, within 30 days thereafter. The Court will hold a status hearing in this proceeding on November 21, 2001 at 10:30 a.m.