In re Murrill P. MURPHY, Debtor.

Marvin A. Sicherman, Trustee,
Plaintiff,

v.

Murrill P. Murphy, Defendant.

Bankruptcy No. 99–12150.
Adversary No. 99–1334.

United States Bankruptcy Court,
N.D. Ohio.

Feb. 4, 2000.

---

Robert D. Barr, Esquire, Dettelbach, Sicherman & Baumgart, Cleveland, Counsel for Plaintiff.

Alix A. Wintner, Esquire, Cleveland, Counsel for Defendant/Debtor.

## MEMORANDUM OF OPINION

DAVID F. SNOW, Bankruptcy Judge.

### Background

Murrill P. Murphy (the "Debtor") filed his petition initiating a chapter 7 liquidation case on March 25, 1999. Marvin A. Sicherman was appointed Trustee on March 29 (the "Trustee"). On August 11, 1999, the Trustee filed this adversary proceeding objecting to the Debtor's discharge under section 727(a)(5) of the Bankruptcy Code (11 U.S.C. §§ 101–1330), which he later supplemented to include an

objection to the Debtor's discharge under section 727(a)(6) of the Bankruptcy Code.

The matter was tried to the Court on January 12, 2000. The Debtor was the Trustee's sole witness. The only other witness, called by the Debtor, was a co-worker and friend of the Debtor. This opinion sets forth the Court's findings of fact and conclusions of law under Rule 7058 of the Federal Rules of Bankruptcy Procedure. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

The Debtor's problems culminating in his bankruptcy proceeding arose out of a 1997 divorce initiated by his then wife and the mother of his two children. In May, 1997, she filed a divorce complaint and moved out of the couple's home taking their two minor children with her. For several weeks, according to his testimony, the Debtor had no knowledge of their whereabouts. The marriage was terminated in a November, 1997, divorce decree which imposed upon the Debtor child and spousal support obligations of about $500 a week. These events left the Debtor angry, anxious and depressed, so much so that, according to his testimony, he ran through $54,000 drinking and gambling. He withdrew $32,000 of the $54,000 from his bank account in May, 1997, and obtained the other $22,000 from the sale of the couple's home in November, 1997.

The Trustee endeavored to pin down details of the expenditure of the $54,000 and requested the Debtor to furnish documentary or other evidence backing up his story. However, the Debtor claimed at both his 341 examination and at trial that he had no record of these expenditures and could not recall details of specific payments other than to testify that most of the gambling had occurred in St. Louis, where he was often sent on business by his employer, or in Las Vegas. He testified that he had no records of his gambling trips since he drove to St. Louis.

Sometime after filing his petition in this chapter 7 case, the Debtor received a tax refund from the State of Ohio. He testified that he used that refund, which was property of his chapter 7 estate, to cover a shortfall owed on his federal income taxes. On September 29, 1999, the Court entered an order requiring the Debtor to pay to the Trustee $1,116, which constituted the nonexempt portion of his Ohio state tax refund for 1998 (the "Turnover Order"). The Debtor failed to make that payment or otherwise respond to the Turnover Order until the eve of trial when he filed a motion requesting that he be allowed to pay the funds to the Trustee over a six month period. The motion stated that the Debtor did not have money to pay the Trustee the amount owed and that he would need six months to accumulate it.

## Analysis

### Section 727(a)(5)

This section provides in relevant part that:

> The court shall grant the debtor a discharge, unless ... (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities ....

This is one of several subsections of section 727(a) which require a chapter 7 debtor to provide relevant details of financial transactions. Subsection 3 denies discharge if the debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve" certain recorded information. Subsection 4(D) denies discharge if the debtor has withheld from the trustee recorded information relating to the debtor's property or financial affairs.

▮ In effect, these two provisions, together with subsection 5, impose upon the debtor the obligation to cooperate in furnishing the trustee an appropriate history of his debts, assets and financial transactions. In this case, however, the Trustee has not objected to discharge because of the Debtor's failure to keep books and records or to turn over books and records

but with the more general failure to "explain satisfactorily" the disposition of the $54,000.

■ The Trustee has the burden of proving that the Debtor's explanation is unsatisfactory under subsection (5). Bankruptcy Rule 4005. There is no question in this case but what the Trustee established a *prima facie* case under subsection (5)—the disappearance of this much money without record or trace. The Debtor showed total unsecured obligations of $33,000 in his chapter 7 petition. The $54,000 would have been more than enough "to meet the debtor's liabilities" under subsection (5). At that point the burden of going forward with evidence to explain the loss of the $54,000, although not the ultimate burden of proof, shifted to the Debtor. He attempted to meet that burden with testimony that he drank and gambled the money away. He provided almost no detail of these expenditures and explained his actions as the result of depression and "out of character" behavior for which he received treatment from a psychologist on an outpatient basis.

The Court must decide whether this is a satisfactory explanation of the fate of the $54,000. The only case cited by the parties on the issue is *Dolin v. Northern Petrochemical Co. (In re Dolin)*, 799 F.2d 251 (6th Cir.1986). In *Dolin* the debtor spent nearly $600,000 to fund his drug and gambling addictions but provided little or no specific information as to where the money had gone. The court considered whether his lack of records and detail on the use of the funds was satisfactorily explained by the fact that his drug transactions were illegal and that his gambling was probably illegal as well. The court concluded that illegality was not an excuse for failing to maintain books and records under § 727(a)(3) nor did it constitute a satisfactory explanation under § 727(a)(5).

The word "satisfactorily" in subsection (5) is ambiguous. It could mean either that the debtor's disposition of assets must be proper or that the debtor's explanation

must provide a reasonable accounting of what happened to the assets, whether proper or not. *Dolin* does not entirely resolve this ambiguity. There is language in the opinion which could be cited to support either interpretation. However, the focus of the *Dolin* opinion is on the debtor's obligation to account for his disposition of his assets and this focus is borne out in the structure of section 727.

Where section 727 is concerned with the actual disposition of assets, e.g., fraudulent transfer, discharge is denied only if the proscribed disposition is made within the year preceding the bankruptcy filing. 28 U.S.C. § 727(a)(2)(A). Therefore, the debtor is not to be penalized under section 727(a)(5) for gambling, drinking or other waste of his assets which, as here, occurred more than a year prior to his filing his petition.

■ Although there appears to be no doubt that the Debtor did use or lose most of the $54,000 in gambling and drinking, his explanation as reflected by his testimony at trial was not satisfactory. His alleged inability to supply any details as to his drinking or gambling bouts except that the latter took place mostly in Las Vegas or St. Louis, is not satisfactorily explained by the anger, anxiety or depression he alleges prompted those bouts. He appeared to make little effort to recall the times, places, amounts or other details of his gambling trips. His attitude appeared to be that his general statements should just be accepted as sufficient and that he need not be bothered to supply the details. He supplied no documents or records of any kind to the Trustee that relate to the use and loss of the funds and could supply no dates or times during which he gambled or drank. His almost complete inability to recall any of those details is not explained by depression or anger. His alleged total lack of recall is undermined by the fact that he continued to work full time during the period in question and stated that he does his job of estimating detailed demoli-

tion and renovation projects well. It is further undermined by his admission at trial that he gave his girlfriend several thousand dollars in December, 1997, to buy a car.

■ The trustee in a chapter 7 case is charged not only with the duty of collecting, administering and distributing the debtor's assets but of making appropriate inquiries and investigations to be sure that such assets have been turned over to the trustee or accounted for. The provisions of subsections 727(a)(2), (4)(D) and (5) all reflect the fact that a debtor's fresh start is premised upon the debtor cooperating in that effort.

This is the first case in this judge's nearly 12 years on the bench where a trustee has found a debtor's lack of cooperation under section 727(a)(5) sufficient to pursue a nondischargeability complaint. The Trustee in this case is one of the most experienced and long-serving bankruptcy trustees in this district. At the several pretrials in this proceeding the Trustee made clear that the Debtor's refusal to cooperate made determination of the actual fate of the $54,000 impossible. That refusal was reflected in the Debtor's testimony at trial. Therefore, the Court will sustain the Trustee's objection to the Debtor's discharge under section 727(a)(5).

### Section 727(a)(6)(A)

This section provides in relevant part that:

The court shall grant the debtor a discharge, unless . . . (6) the debtor has refused in the case—(A) to obey any lawful order of the court . . . .

There is no dispute that the Debtor failed to pay the $1,116 to the Trustee as required in the Turnover Order. The Debtor acknowledged that he used the state tax refund to pay his federal tax liability. His sole defense to the Turnover Order, raised for the first time more than three months after the Turnover Order was entered and on the eve of trial, was that he did not have $1,116 and needed six more months to come up with it. That response and request highlight the Debtor's contemptuous approach to the bankruptcy process which is at the heart of the Trustee's dischargeability complaint under section 523(a)(5).

■ On its face Schedule I to the Debtor's petition initiating this case filed in March 1999 appeared to provide some support for his claimed inability to pay the $1,116 despite his substantial income. That Schedule shows income of $2,530 a month and expenses of $2,525 a month leaving him a disposable income of only $5 a month. The trouble with that excuse, however, is that Schedule I understated the Debtor's 1999 gross income by over $700 a month. In Schedule I the Debtor showed a monthly gross income of $6,350 a month or $76,200 a year. In his testimony at trial he acknowledged that his 1999 income had been at least $85,000 or $7,083 a month. Moreover, the $85,000 figure was no fluke. He earned over $92,000 in 1998.

The only other excuse offered by the Debtor was that his support payments of $500 a week kept him strapped financially. Those payments amount to $26,000 a year, the spousal support portion of which is deductible for federal income tax purposes, leaving him gross income of $59,000 for his own needs. Under these circumstances it appears that his failure to respond to the Court's Turnover Order was willful and his discharge should be denied under section 727(a)(6)(A).