### In re Richard F. HOWELLS, Jr., Joan A. Howells, Debtors.

Buckeye Retirement Co., L.L.C., Plaintiff,

v.

Richard F. Howells, Jr., et al., Defendants.

Bankruptcy No. 05–94158.
Adversary No. 06–01346.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

May 7, 2007.

Scott H. Scharf, Thomas C. Pavlik, Cleveland, OH, for Debtors/Defendants.

Brian A. Bash, Cleveland, OH, Trustee.

E. Mark Young, Roetzel & Andress, Cleveland, OH, for Plaintiff.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Chief Bankruptcy Judge.

Before this Court is the Complaint Objecting to Dischargeability of Debt (the "Complaint") pursuant to 11 U.S.C. §§ 523 and 727 filed by Buckeye Retirement Co., L.L.C. ("Buckeye") against Richard F. and Joan A. Howells (the "Debtors"). The Debtors have answered with a general denial.

This Court has core matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(J), 28 U.S.C. § 1334 and General Order No. 84 of the District.

After considering the parties' respective briefs and argument at the March 28, 2007 evidentiary hearing, the Court issues this memorandum of opinion and order.

\*

Richard F. Howells, Jr. and David Slifka incorporated a machining business known as Tool Masters on December 4, 1995. In 1999, David Slifka left the company to pursue other interests and Richard F. Howells became the 100% owner of Tool Masters. Subsequently, the Debtors created an entity known as Bennah Group, LLC ("Bennah Group") as a holding company for their rental properties.

On or about November 6, 2003, Tool Masters, Bennah Group, and the Debtors, as co-signers, executed two business loans, the first loan in the principal amount of $762,109.40 with interest at the annual rate of 5% and the second loan in the principal amount of $53,800.39, to purchase real property located at 539 North State Road, Medina, Ohio 44256 (the "Premises"). Buckeye secured these loans with a blanket security interest in all of Tool Masters and Bennah Group's business assets. A commercial security agreement memorialized the financing arrangement and financing statements were filed. Tool Masters subsequently defaulted on the business loans and Buckeye pursued foreclosure, filing a complaint for breach of contract and foreclosure on April 11, 2005. Buckeye foreclosed on the Premises and obtained $444,500.10 at a sheriffs sale. In May of 2005, Tool Masters ceased business operations due to financial difficulty, and Richard F. Howells, Jr. began working as sole proprietor of Richard F. Howells, Jr. d/b/a 3D CNC ("3D CNC").[1]

The Debtors, personally, filed a voluntary Chapter 7 petition on October 15, 2005. On March 7, 2006, Buckeye filed proofs of claim against the Debtors' bankruptcy estate for the balances due on the two business loans following the sheriff's sale. Buckeye filed the subject Complaint on April 24, 2006 objecting to discharge of the Debtors, generally, pursuant to 11 U.S.C. § 727. No specific debt dischargeability subsection of § 523 of the Bankruptcy Code was alleged by Buckeye.

\* \*

Buckeye objects to the dischargeability of Debtors' debt with regard to assets of the Debtors' businesses, Tool Masters and Bennah Group, encumbered by a blanket security interest. Buckeye contends that pursuant to 11 U.S.C. § 727(a)(2), (a)(3)

and (a)(5) discharge of the Debtors' debt should not be granted. It is undisputed that the Debtors co-signed two business loans, and that Buckeye secured these loans with a blanket security interest in all of Tool Masters and Bennah Group's business assets. Although it foreclosed on the Premises and obtained $444,500.10 at a sheriff's sale, Buckeye contends that $482,988.82 remains owed to it by the Debtors and can be paid from assets and proceeds which the Debtors withheld.

Buckeye further contends that equipment and machinery owned by Tool Masters were improperly removed from the Premises for use in the Debtors new business, Richard F. Howells, Jr. d/b/a 3D CNC ("3D CNC"), a sole proprietorship. Buckeye states that the equipment and machinery which the Debtors removed include: Four vertical drills [Arrow 500 (Serial# :7042–A00–96–0855), Arrow 750 (Serial# :7043–A00–95–0411), Arrow 1000 (Serial# :7049–A08–97–0154), and Sabre 1000 (Serial# :7039–A01–96–0726) ]; a feeder [Bridgeport Feed]; two towmotors [Towmotor (8,000 1b.) and Towmotor (3,000 lb.) ]; welding equipment [Tig & Mig Welders]; a grinder [6×8 Chevalier Wet Surface Grinder]; a sharpener [Precision Drill Sharpener]; a surface plate [2×3 Toolroom Grade Surface Plate]; an hydraulic press [50–Ton Industrial Press]; a band saw [Metal Cutting Band Saw]; a vice for machining [12″ Bison 6 Jaw Scroll Chuck]; and some miscellaneous tools [Misc. Small Tools]. It further asserts that the use of this equipment and machinery has generated $20,000 of gross monthly income for the Debtors' sole proprietorship as stated on the Debtors' Schedule I attachment. Buckeye argues that it is entitled to all of the equipment and machinery identified, along with all

---

**1.** Although Tool Masters closed and no longer operates as a business, there was no formal winding down of the business and Tool Masters did not seek bankruptcy relief.

profits and accounts receivable generated from their use under its blanket lien.

The Debtors oppose the relief requested by Buckeye and contend that § 727 does not apply to the facts of this case. The Debtors state that § 727 sets forth the limited instances where a debtor's conduct is so egregious that he forfeits his right to a discharge of debt. The Debtors assert that they have obeyed all orders of the court, duly filed all schedules and other required documents, and have not concealed, destroyed, mutilated, falsified or failed to keep or preserve any documents. The Debtors further assert that any machinery, equipment, tools, or other items that the Debtors retained after their former businesses closed were their personal property or leased equipment that would not be subject to Buckeye's security interest in the business assets. Therefore, the Debtors oppose Buckeye's objections to their obtaining a discharge under § 727 of the Bankruptcy Code.

\* \* \*

The dispositive issues before this Court are whether the Debtors should be denied a general discharge under § 727 of the Bankruptcy Code and whether specific debts are nondischargeable pursuant to § 523 of the Bankruptcy Code.

\* \* \* \*

Title 11 U.S.C. § 727 provides for the court to grant a general discharge to a Chapter 7 debtor unless the debtor commits certain impermissible acts. Section 727 states, in pertinent part, as follows:

(a) The court shall grant the debtor a discharge, unless—

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

Title 11 U.S.C. § 523 sets forth exceptions to discharge for specific debt.

\* \* \* \* \*

 Pursuant to Bankruptcy Rule 4005, at a trial on a complaint objecting to a discharge, the plaintiff has the burden of proving that a discharge is unwarranted. The plaintiff bears the burden of proving the objection to the debtor's discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) and *In re Meyers*, 196 F.3d 622, 624 (6th Cir.1999). If the plaintiff establishes a *prima facie* case, the burden shifts to the debtor to make a credible explanation of his actions. *In re Murphy*, 244 B.R. 418, 421 (Bkrtcy. N.D.Ohio 2000).

 In order to establish a *prima facie* case under § 727(a)(2), Buckeye must establish by a preponderance of the evidence that: (1) the Debtors transferred, removed, destroyed, or concealed the Debtors' property or property of the bankruptcy estate; (2) the Debtors did so within one year before the date their bankruptcy

petition was filed or after the petition was filed; and (3) the Debtors did so with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under the Bankruptcy Code. A determination of fraudulent intent depends, in part, on an assessment of the credibility of the debtor. *See* Fed. R.Bankr.P. 8013.

In this case, the evidence presented at trial shows that Richard F. Howells, the sole shareholder of Tool Masters, discontinued operation of the business in May of 2005 (within one year before the bankruptcy petition) and subsequently brought some of Tool Masters' property into his sole proprietorship and then into the Debtors' bankruptcy estate. By bringing additional assets into the bankruptcy estate, Mr. Howells did the opposite of the sort of conduct prohibited under § 727(a)(2). Additionally, the Debtors disclosed their interests in Tool Masters and Bennah Group on Schedule B of their bankruptcy petition. Buckeye has presented no evidence that would prove that the Debtors transferred their interest in Tool Masters or that they concealed it. For these reasons, the Court denies Buckeye's claim under § 727(a)(2).

In order to establish *a prima facie* case under § 727(a)(3), Buckeye must establish by a preponderance of the evidence that the Debtors: (1) concealed, or failed to keep or preserve, recorded information about their financial condition and property within the last year in an attempt to delay and/or defraud their creditors and the Trustee; and (2) they have failed to preserve, or have destroyed, records for its business, i.e. Tool Masters, which were necessary to determine the Debtors' financial condition.

Herein, during its cross-examination of Richard F. Howells, Buckeye attempted to show that the Debtors failed to produce records documenting all machinery and equipment previously used by Tool Masters. Even if the Court finds that the Debtors did not produce records documenting all machinery and equipment previously used by Tool Masters, the Debtors' failure to produce records from their former corporation is not sufficient to deny the Debtors a discharge under § 727(a)(3), as such objection necessarily must be based on the Debtors' failure to produce books and records which depict their personal finances, not that of their corporation. *Phillips v. Nipper (In re Nipper),* 186 B.R. 284, 289 (Bankr.M.D.Fla.1995). A debtor's corporation will generally be treated as an entity separate and distinct from the individual debtor. *Id.* In certain cases, however, the books and records of a debtor's corporation are relevant in ascertaining an individual debtor's financial status if they accurately portray that debtor's personal finances. *See In re Martin,* 554 F.2d 55, 58 (2d Cir.1977).

Buckeye focused on four lease agreements entered into by Tool Masters for equipment that the Debtors did not list on Schedule G of their personal bankruptcy petition. Notwithstanding, Buckeye asserted that there remained a lease obligation against the Debtors. The Debtors assert that they have provided to Buckeye all documentation in their possession related to the leases of this equipment. In order to meet its burden of proof under § 727(a)(3), Buckeye must show that the status of the leases entered into by Tool Masters are necessary to determining the financial condition of the Debtors, individually. In this regard, Buckeye has failed to meet its burden and has not made a satisfactory showing. For this reason, the Court denies Buckeye's claim under § 727(a)(3).

In order to establish a *prima facie* case under § 727(a)(5), Buckeye must establish by a preponderance of the evidence that the Debtors: (1) experienced a

loss of assets or deficiency of assets; and (2) cannot provide a satisfactory explanation for such loss. As explained under the § 727(a)(2) analysis above, the Debtors brought additional assets into the bankruptcy estate. Therefore, Buckeye's allegation that the Debtors experienced a loss of assets for which they cannot provide a satisfactory explanation does not apply to the facts of this case and the Court denies Buckeye's claim under § 727(a)(5).

In order to establish a *prima facie* case under § 523, Buckeye must establish by a preponderance of the evidence the elements of an exception to discharge enumerated pursuant to § 523. Buckeye did not present any evidence that purported to support a claim of exception to discharge under § 523 and also made no arguments in support of a claim of exception to discharge under § 523. For these reasons, Buckeye has not met its burden of proof for a claim of exception to discharge under § 523.

\* \* \* \* \* \*

At trial, Buckeye's attorney stated that Buckeye was only seeking relief under §§ 727(a)(2), (a)(3), and (a)(5). As there was no prosecution of a claim of exception to discharge under § 523, Buckeye has not met its burden under Bankruptcy Code § 523. Therefore, any relief sought pursuant to § 523 is hereby denied. Additionally, having failed to satisfy its burden under Bankruptcy Code §§ 727(a)(2), (a)(3), and (a)(5), the relief sought herein by Buckeye is hereby denied. Each party is to bear its respective costs.

**IT IS SO ORDERED.**